GALVESTON CITY RAILWAY CO. v. MICHAEL NOLAN.

*(Case No. 1169.)*

1. SURVIVOR OF ACTIONS — JUDGMENT FOR TORT. —The proviso to Art. 1044, R. S., does not affect the rights of the personal representative of a deceased plaintiff who, while living, had sued for a personal injury and recovered judgment therefor in the district court; his rights remain as they existed before the enactment. The cause of action is merged in the judgment of the district court, which survives, and is not vacated or opened by writ of error or appeal, but remains valid and subsisting until set aside, and constitutes, in favor of the administrator, a cause of action.

2. SAME.— It would be otherwise had judgment been rendered against the plaintiff, and after plaintiff's death an appeal had been taken by the administrator; the cause of action would then be that on which the suit was originally founded, and would not survive.

3. STREET RAILWAY — NEGLIGENCE — CONTRACT. — In a suit against a street railway for damages resulting from alleged negligence, it was charged that the negligence consisted in failing to keep the track in good repair and on a level with the grade of the street. The contract with the city under which the road was constructed required that the track should be so built as not to impede travel on the streets traversed by it, after the streets should be graded, and required the company to keep its road-bed in good repair, up to the level of the street; and that it should in no case be below the city grade of the streets after the streets were graded. *Held* —

    1. That the road was under no obligation to fill up the streets beneath its track so as to have its road-bed on a level with the street, but was bound to conform and keep the level of the road-bed up to that of the street when graded.

    2. The company incurred no liability for failing to conform the elevation of its track to irregularities in the street, when it had once been constructed in accordance with an established grade.

    3. The company being by its contract bound to so construct its road as "not to impede carriage travel after the streets have been graded by the city," would be in default, even after conforming to the established grade, if it failed to take such precautions as would enable vehicles to cross it with reasonable safety at such places and intervals as the public convenience required, even if the street had worn away from the established grade. But it did not necessarily result that the company was under legal obligation to keep its road at all points so that vehicles could cross in safety.

4. NEGLIGENCE.— See charge of court held erroneous in reference to averments in the petition.

APPEAL from Galveston.   Tried below before the Hon. Wm. H. Stewart.

Suit by Michael Nolan against the Galveston City Railroad Company for injuries to himself and to his dray, caused by alleged imperfections in defendant's railroad track and road-bed, over which plaintiff drove his dray loaded with whisky. The defense was: First, a general denial; second, that the injuries complained of resulted from the negligence of plaintiff; third, that if the injuries resulted from negligence of defendant, plaintiff was guilty of contributory negligence.   There was a verdict and judgment in favor of plaintiff for $1,300.

Plaintiff alleged that his dray was sound and in good order and repair, and was carefully and properly laden with three barrels of whisky at the time of the accident, which resulted in the injuries complained of as the basis of the suit; that in driving his dray so loaded along the streets of Galveston, he crossed defendant's railroad track; that in so doing, by reason of alleged unevenness between the surface of the street and defendant's track over which he crossed, the wheels of his dray struck against the track with such concussion as to crush the wheels of the dray, throwing plaintiff off upon the ground, throwing the whisky down upon him, causing severe personal injuries, for which, as well as for damage done the dray, this suit was brought.

Defendant pleaded contributory negligence on the part of defendant.   There was evidence to show that, at the time of the accident, the dray was old, worn, unsuited to the purpose of transporting whisky, and was improperly laden.   But on this subject there was conflict.

There was much controversy about the old dray, and charges asked and refused about it, which, in view of the opinion, need not be noticed.

The defendant requested the court to charge the jury: That if they believed the alleged accident was occasioned, in whole or in part, through the negligence or imprudence of plaintiff, in using a dray that was not safe to be used,   *   *   *   or in

driving said dray over irregularities which plaintiff either saw, or by use of ordinary care might have seen, before reaching such irregularities, it was immaterial whether such irregularities were the result of fault on defendant's part, and they should find for defendant. This charge was refused.

There was proof tending to show that plaintiff crossed defendant's track in order to avoid approaching vehicles. The street was frequented by vehicles, was much cut up, worn into holes, and worn down from the established grade, especially alongside the defendant's track, leaving the track at such places exposed above the actual surface of the street; this was the case where the accident occurred, which facts were known to plaintiff at and before the accident, and that it was dangerous to drive a loaded vehicle over the track at the place where the accident occurred.

Defendant was an incorporated company. Its charter subjected it in the construction, equipment and running of its railroads, to such conditions and ordinances as the mayor and aldermen of the city of Galveston might impose. The charter of the city of Galveston gives to the city authorities exclusive control and power over the streets, alleys and public grounds and highways of the city, and to abate and remove encroachments or obstructions thereon; to open, extend, establish, grade or otherwise improve the same;   *   *   *   to direct and control the laying and construction of railroad tracks, turn-outs and switches, or prohibit the same in the streets, avenues and alleys unless the same shall have been authorized by law;   *   *   *   to require that railroad tracks, turn-outs and switches shall be so constructed as to interfere as little as possible with the ordinary travel and use of streets, avenues and alleys;   *   *   *   to compel horse or city railroads to keep their roads in repair.   *   *   *

The mayor and aldermen of the city, by contract with defendant, imposed the following obligations and conditions upon defendant's exercise of its charter franchises, viz.: "That defendant should lay such a rail, and so construct the rail-

road, that they should not impede carriage travel upon the street occupied by said track after said streets should have been graded by the city; and at all times to keep its road-bed in good repair, and keep it up to the level of the streets, and in no case should said road-bed be above or below the city grade of the street after said street should have been graded by the city." Under this contract defendant's road was constructed on Market street, and at the point where the accident occurred. In 1877 the municipal authorities of the city established, as the permanent grade of the street where the accident occurred, 6 2-10 feet above the mean low tide, and raised the surface of the street to the established grade. At the same time defendant raised its track so as to bring the upper surface of the rails on a level with the established grade, and at that level it has since remained, and was at the time of the accident. The street at and near the place of the accident was always extensively used by heavily loaded vehicles as a highway, by reason of which it was cut up, worn into holes, and worn down from the established grade, at the point where the accident occurred, leaving defendant's rail exposed above the surface of the street. Plaintiff, in attempting to cross defendant's track at this place, broke his dray by reason of the railroad iron being two or three inches above the ground, and the injuries resulted therefrom. The defendant asked the court to charge the jury that, if plaintiff's injuries resulted from the exposure of defendant's track above the surface of the adjacent street, and defendant's track was on the level of the grade fixed by the city authorities, defendant was not answerable for the surface of the street being lower, and the court refused so to charge, but instructed the jury as will be seen quoted in the opinion.

After trial, and pending appeal, Nolan died; that fact was suggested in this court, supported by affidavit, and a motion was made to abate the suit.

*Scott & Levi* for appellant.

I. While article 1044 does not, in terms, abate any suit founded originally on a personal cause of action, it evidently intends to do so, because:   1. Of the repeal of every other law by which such a suit could be further maintained, and the exclusion of such suits from the operation of that article. 2. The language of the proviso evidently intends to refer to the cause of action originally sued on, as determining whether or not it shall come within the meaning of the law, and not to the cause of action in the supreme court as distinguished and defined in Gibbs v. Belcher, *supra*, for, under that decision, all such suits survive, and the proviso would be meaningless. If, therefore, it is not intended to operate an abatement in suits originally founded upon causes of action which do not survive, then have the legislature made a most unreasonable distinction in denying these suits the privilege accorded others in this court, of being decided without making new parties and requiring new parties to be made in this court, only in cases which, in the district court, are based on causes of action which do not survive.   For in Gibbs v. Belcher, 30 Tex., 79, this court says that there is no sensible distinction between such causes and others, when they reach this court.

II. The injuries complained of by plaintiff were the result of exposure of defendant's track and road-bed above the surface of the adjacent street.   Defendant's track and road-bed were on the level which the law required it should keep and observe.   The adjacent street was not subject to control or interference of defendant, who could not be held responsible for injuries thus occasioned.   San Antonio v. Lewis, 9 Tex., 71; Bennett v. Hollis, 9 Tex., 442; Reid v. Reid, 11 Tex., 593; Galveston City v. Galveston City Railroad, 46 Tex., 435; Warner v. R. R. Co., 6 Phila. (Pa.), 537; Mosely v. Baker, 2 Sneed (Tenn.), 362; Addison on Torts, vol. 2, § 1, ch. XVI, and notes, with authorities therein cited; Broom's Legal Maxims, 181, 187; Robbins v. Omnibus Co., 32 Cal., 472; Lackland v. N. M. R. R. Co., 34 Mo., 259; 6 Allen (Mass.), 449.

III. When defendant had placed its track and road-bed on

the level of the established grade of the streets, as fixed by the municipal authorities of the city of Galveston, and maintained its said track and road-bed on said level, its whole duty was performed, and it could do nothing more towards the safety of passengers and vehicles crossing its track and road-bed, without either violating its obligation by lowering its track and road-bed below said level, so as to conform to the wearing away of the adjacent street, or by filling and raising the adjacent street to the level of the established grade, usurping the power of the municipal authorities, to whom exclusive jurisdiction over the streets was given by law.

IV. The court erred in its charge to the jury in that the said charge, and the several parts thereof, were obscure, inconsistent and repugnant in this: that by said charge the jury were instructed on the one hand that it was the duty of the city of Galveston to keep her streets up to the level of the street's grade, and the railroad (meaning defendant) had no authority in any manner to improve or in any manner to interfere with any portion of the streets outside of its road-bed, neither by digging it down or filling it up; and on the other hand, that when the streets had an established grade and had been graded in accordance therewith, and the city railroad had constructed its road-bed in accordance therewith, so that it could be crossed by vehicles with reasonable safety, and thereafter the streets became worn, so that it would be unsafe to cross the road-bed and track, and in such case a person in a vehicle, in attempting to cross the road-bed and track, and was not guilty of any negligence in so doing, and was thereby injured by the negligence of the railroad in not having its track and road-bed reasonably safe for crossing the same, although it should have been the duty of the city of Galveston to have repaired the street and raised it to its proper grade, on a level with the road-bed, yet such a state of facts would not exonerate the railroad from damages occasioned, if the injury was incurred by the negligence of the railroad in obstructing the safe passage across the road-bed,

and thereby the jury was confused and misled. Weaver *v.* Ashcroft, 50 Tex., 427; 3 Graham & Waterman on New Trials, 774, 775, 792.

V. The verdict was contrary to the evidence, in that the alleged negligence on the part of defendant consisted in defendant's failure to conform to the requirements of the contract with the municipal authorities of Galveston, by keeping its railroad in good repair and on a level with the established grade of the street; and the undisputed facts proven in the case showed that defendant complied strictly with its obligation in that regard. McAfee *v.* Robertson, 41 Tex., 357; Cunningham *v.* The State, 5 Tex., 440; Parker *v.* Leman, 10 Tex., 119.

*Harcourt & Harcourt* for appellee. — There is only one question that is debatable, presented in the record, and that is, whether the failure of duty of the city of Galveston to have repaired the street and raise it to its proper grade, on a level with the road-bed of the city railroad, would exonerate the railroad from damages, where the injury was incurred by the railroad obstructing the safe passage of the streets across the road-bed? The appellant's exercise of its charter franchise, was on condition that it should not impede carriage travel upon the street, and that it should at all times keep its road-bed in good repair, and keep it up to the level of the street, and in no case should said road-bed be above or below the grade of the street. 2 Dillon on Mun. Corp., § 794, and cases cited; id., § 572; Horse Railroad Co. *v.* Deitz, 50 Ill., 210; Brooklyn *v.* City R. R., 47 N. Y., 475.

GOULD, ASSOCIATE JUSTICE. — In attempting to cross the track and switch of the Galveston City Railroad with a loaded dray, Michael Nolan had his dray broken, and received personal injuries. This suit was brought to recover damages for these injuries, alleging that the defendant had negligently failed to keep their track in good repair, and on a level with

the grade of the street, and had permitted their rails to become elevated above the grade of the street, by reason whereof the accident occurred. The trial resulted in a judgment in favor of Nolan for $1,300, and the case has been brought to this court by appeal.

Appellee moves to abate the suit on the ground that Nolan has died since the appeal was perfected. The statute directs that the death of a party to the record shall not abate causes pending in this court, " but the court shall proceed to adjudicate such cause and render judgment therein as if all the parties thereto were still living, and such judgment shall have the same force and effect as if rendered in the lifetime of all the parties thereto; provided, however, that this act shall not apply to any suit or action in which the cause of action does not survive in favor of, or against the legal representatives of a deceased person. R. S., 1044. In the case of Gibbs *v.* Belcher, 30 Tex., '79, this subject was discussed, and it was held that the original cause of action was merged in the judgment of the district court, and that such judgment was not vacated or opened by writ of error or appeal, but remained valid and subsisting until set aside, constituting in favor of the administrator a cause of action.

The manifest object of the statute is to allow litigation in the supreme court to proceed unaffected by the death of the parties, and the proviso, in the same spirit, hastens the termination in that court of useless litigation, but enacts no new forfeiture or loss of rights as the consequence of death. The proviso was designed not to vacate judgments, but to guard against the abuse of the statute by those whose right of recovery was dependent on the establishment of their original cause of action, and whose cause of action therefore did not survive.

If Nolan had failed to recover in the district court, and had thereupon brought the case to this court, his cause of action would still be that on which his suit was originally founded and would not survive his death. Having recovered a judgment, that judgment and the appeal or writ of error by which

the defendant therein brings it to this court for revision, remain, we think, alike unaffected by the proviso.

We have seen that the alleged negligence of the railroad consisted in failing to keep their track in good repair and on a level with the grade of the street. Their contract with the city contained the following: " XII. Said party shall lay such a rail, and shall so construct the railroad, that they shall not impede carriage travel upon the streets occupied by said tracks, after said streets shall have been graded by the city." " XIII. Said party shall at all times keep the road-bed of said railroad in good repair, and shall keep said road-bed up to the level of the street. In no case shall said road be above or below the city grade of the street after said streets shall have been graded by the city." In the case of City of Galveston *v.* Galveston City R. R. Co., 46 Tex., 435, these and other provisions of the contract were construed, and it was held that the railroad was under no obligation to fill up the streets beneath its track, so as to keep its road-bed on a level with the street on each side of the track, but that it was bound to conform and keep the level of the road-bed to that of the streets when graded.

The evidence is, that the grade of the streets had been established; that Market street, on which the railroad was, had been raised to the established grade; that the railroad had been conformed to that grade, and remained so conformed, and conformed to the actual surface of the street, except in places where the street had worn down below the established grade. This wearing away had occasioned holes and irregularities in the street, and in such places the track and rails were above the surface of that part of the street, though still on the level of the established grade, up to which the city undertook to keep the street. In our opinion the railroad company incurred no liability merely by keeping their road-bed and rails at the level of the established grade, and failing to conform to irregularities in the street. Their liability must grow out of some failure to comply with their obligations, and not out of com-

pliance. Hence, if liable in this case, it must be because of something else than the level of their road-bed and rails.

It was charged that they failed to keep their track in good repair, but the specific allegation is, that they "had failed to so construct and operate their said track as to conform to the proper grade of said street, and so as not to impede the passage of drays and carriages in safely passing over the same, and that by their gross negligence they had permitted the rails of said track to become elevated above the level and grade of said street." The evidence points to no specific act of negligence in the construction or state of repair of the road, other than the elevation of the rails, and the fact that in consequence of the depressions in the street and the height of the rails, it was dangerous for loaded vehicles to cross the road at the place where the accident occurred.

There is no evidence whatever that there was any negligence in the character of rails used, or the manner in which the road was constructed or kept in repair, unless such negligence is to be inferred from the fact that at the place where the accident occurred the street was much used, and it was dangerous for loaded vehicles to cross the railroad there. If there were reasonable precautions in the manner of constructing and repairing the railroad, which in view of the frequency of passing vehicles at that point the company should have taken in order not to impede carriage travel, the evidence is wholly silent on the subject.

. The meaning of the expression "impede carriage travel," may be gathered from article V of the contract, prohibiting switches and side tracks at the intersections of streets, and reserving the right to the city authorities to direct a change of any side tracks, turnouts and switches that "impede carriage travel and cause public inconvenience."

It did not follow that carriage travel was impeded in the meaning of the contract, because vehicles could not at all points cross the road with reasonable safety. Certainly travel would be impeded and the railroad be in default, whatever the

faithfulness with which it adhered to the established grade, if it failed to take such precautions as would enable vehicles to cross it with reasonable safety at such places and intervals as the public convenience required, although the difficulty was occasioned by the wearing away of the street from the established grade. But we repeat, it was not a conclusion of law from the contract that the railroad was bound at all events to keep its road at all points so that vehicles could cross it safely. The charge of the court, however, assumes this to be the law. The main part of the charge is as follows: "Whenever the city of Galveston has established a grade for its streets, then it is the duty of the Galveston Railroad Company to make her road-bed conform to such grade and on a level therewith. If you believe from the evidence that the city of Galveston did, before the injuries complained of, establish a grade and make its streets in accordance therewith, for that part of Market street where the injury occurred, and at the time of said injury the defendant had constructed its road-bed so as to conform to the grade so established by the city, and so as to conform to the surface of the street, and that at the time of the injury the road-bed was according to the grade, and that defendant was not guilty of negligence with respect to its said duty, then the verdict should be for defendant.

"As to what constituted the road-bed, you must determine from the evidence introduced. It is also the duty of the railroad to so construct its road-bed and track, and keep the same in a reasonably safe condition for vehicles to cross the railroad bed and rails with reasonable safety. It is the duty of the city of Galveston to keep its streets up to the level of the street grade, and the railroad has no authority in any manner to improve, or in any manner interfere with, any portion of the street outside of its railroad bed, neither by digging it down or filling it up. Where the street has an established grade, and the street has been graded in accordance therewith, and the city railroad has properly constructed its road-bed and track in accordance therewith, so that it can be crossed

by vehicles with reasonable safety; and that thereafter the street becomes worn so that it would not be safe to cross the railroad bed and track, and in such case a person in a vehicle were to attempt to cross the railroad bed and track, and was not guilty of any negligence in attempting to cross, and, in so attempting to cross, received an injury by the negligence of the railroad in not having its road-bed and track reasonably safe for crossing the same, although it should have been the duty of the city of Galveston to have repaired the street and raised it to its proper grade — on a level with the road-bed,—yet such a state of facts would not exonerate the railroad from damages so occasioned, if the injury was incurred by the negligence of the railroad in obstructing the safe passage across the road-bed."

Because the charge of the court, construed with reference to the averments of the petition and the evidence in the case, was erroneous, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 23, 1880.]