JOSEPH BROOKE v. HENRY N. CLARK.

(Case No. 3601.)

1. STATUTES CONSTRUED — ABATEMENT — CASES APPROVED.— The Galveston City
R. R. Co. v. Nolan, 53 Tex., 139, and Gibbs v. Belcher, 30 Tex., 79, construing
Pasch. Dig., art. 6463, approved; and the doctrine again announced that an origi-
nal cause of action is merged in a judgment of the district court in the plaintiff's
favor, which cannot be vacated, or opened by writ of error or appeal, but remains
valid and subsisting until set aside, and constitutes, in favor of the legal repre-
sentatives of the plaintiff, the cause of action.

2. SPECIAL GUARDIAN — PRACTICE.— The statute required, in a suit by or against a
minor, the appointment of a special guardian (Pasch. Dig., arts. 6969–6973;
Acts of 15th Leg., 187, secs. 134–138).    Though the statute should have been strictly
observed, yet, when a judgment was rendered in the district court in favor of a
minor represented by next friend, no special guardian having been appointed, the
next friend being recognized by the court below throughout the cause as the proper
representative of the minor's interest, without objection from the adversary, the
failure to appoint a special guardian will be regarded as an irregularity only, and
not such as to require a reversal of judgment when urged for the first time after
appeal.    No payment should, however, be allowed on a judgment on such a pro-
ceeding other than a payment into court, until a guardian of the estate is qualified
to receive it.

3. DAMAGES.— A physician attending a woman in child-birth, immediately on the birth
of the child, and before its removal from bed, tied two ligatures and cut the um-
bilical cord.    The next morning it was discovered that he had tied a ligature so
tightly around the child's penis that it resulted in the loss of nearly all the glands
of that member.    In a suit by the child for damages, the court refused to instruct
the jury not to allow vindictive damages if they should find that the injury was the
result of innocent mistake or accident, but they were instructed to find only actual
damages if they found that the injury was the result of a want of ordinary care
and diligence.    They were further told that if they "did not believe that defend-
ant evinced such a gross want of care as would manifest on his part an indifference
to any injury likely to result to plaintiff therefrom," to find only compensatory
damages.    Held,

(1) There was no error in refusing to give the charge asked.
(2) A verdict of $5,500 damages afforded no ground for reversal, as being ex-
cessive.
(3) When the actual damage includes mental suffering through life, the court
can rarely set aside a verdict for damages on the ground of its being excessive.
(4) When the act is so grossly negligent as to raise the presumption of indiffer-
ence, evidence that in other matters connected therewith defendant had shown due

care, and that actual indifference would have been in fact indifference to his own interest, should not be allowed for any other purpose than to be considered by the jury in fixing the amount of exemplary damages.

4. EXEMPLARY DAMAGES.— See opinion and statement of case for facts which, in the judgment of the court, called for a charge on exemplary damages against a physician for malpractice.

APPEAL from Grayson.  Tried below before the Hon. R. R. Gaines.

Fifteen days after the birth of Henry N. Clark, the appellee, this suit was brought by his next friend in his behalf to recover damages of Dr. John Brooke, a practicing physician, who acted as accoucher at the child's birth.  Brooke was charged with gross negligence ·in tying a ligature around appellee's penis, instead of the umbilical cord, at his birth, whereby the glands of the penis came entirely off.

The material testimony was as follows:

Helen R. Clark testified in substance: " She was the mother of the plaintiff; the appellant was the attending physician at his birth; he tied the umbilical cord while the child was in bed, but whether under the cover or not, did not know; heard some one ask him if he wanted a light, and he said 'no, it was not necessary.'  When he came in the next morning, upon my mother showing him the child, she said to him, ' see what you have done.'  He said, ' I don't think it will amount to much; it will get well in a short time.' "

Mrs. Emily McClellan testified that she " is the mother of Mrs. Clark, and was present when the plaintiff was born.  Dr. Brooke was the attending physician, and he was standing at the foot of the bed, and received the child from its mother.  Before receiving the child from beneath the bed-clothing, he tied one cord or ligature, and then removed the cover, tied the second ligature, and cut the umbilical cord, when the child was by Brooke handed to the witness, who wrapped it in a blanket and sat by the stove trying to quiet it. When the first ligature was tied, the child cried out like it was hurt, and continued to cry for about an hour.  The doctor then took the child in his lap, and examined it, and said the string had slipped off the navel cord.  He asked for another string, which I gave him; had given him one at his request before the child was born; both were common wrapping twine.  Mrs. Chaffin assisted Dr. Brooke, and he tied a string on the navel cord, and returned the child to me, and I washed and dressed it and cared for it until morning.  The child had spells of crying through the night; all the dressing that was done next morning was changing its diaper, and that was done by me.  When washing the child next morning, I found a string hanging down, and, taking hold of it, I found it was tied to the

child's penis; it was a part of the same cord witness gave to Dr. Brooke the night before. I had charge of the child all night. When Dr. Brooke came I showed him what he had done, and he said it was probably owing to Mrs. Chaffin being excited, and holding up the wrong thing for him to tie. There was but one string around the navel cord when I dressed the child. There was no string tied after the child was dressed; no one had the child before it was dressed except Dr. Brooke and myself."

The witness, Mrs. McClellan, did not say that she saw it was a boy when she dressed it, but at the time Brooke put it in the blanket for her to take, she saw its sex.

Mrs. C. J. Van Fossen testified: "I was present when Henry N. Clark, plaintiff, was born. Dr. Brooke was the attending physician; he received the child from its mother; Mrs. McClellan was standing at the foot of the bed with a blanket, and Dr. Brooke laid the child upon the blanket; the child was in the hands of Mrs. McClellan when I first saw it. Dr. Brooke asked for a cord before the child was born. Mrs. McClellan took the child and sat by the stove, trying to quiet it. The child cried without ceasing while I stayed. When I went away, left Brooke there. Heard Dr. Brooke say the child was a boy, before it was dressed. Was not present when Mrs. Chaffin and Dr. Brooke tied the cord."

Mrs. A. Pearson testified that she was present when the plaintiff was born. Dr. Brooke was the attending physician, and received the child from its mother and handed it to Mrs. McClellan, who received it on a blanket, and sat by the stove, trying to quiet the child, which was crying. Heard Mrs. McClellan ask whether the child was a boy or girl, and the doctor said it was a boy. First saw the child in Mrs. McClellan's hands, a short time after the child's birth. Some one asked the doctor what was the matter with it, and he took it on his lap, when I left the room. When I returned to the room Mrs. McClellan had the child. Did not see Dr. Brooke and Mrs. Chaffin tie any cord on the navel cord — was out of the room at that time. Was in the room, but did not see Mrs. McClellan wash and dress the child. The child was crying while Mrs. McClellan had it. Heard Dr. Brooke tell Mrs. McClellan, before he left, to notice the cord, and if it slipped and she could not tie it, to send for him. I nursed the child some time after it was washed and dressed. Stayed in the house that night, in another room; left the child with Mrs. McClellan; did not hear any more of it that night. The next morning, about eight o'clock, Mrs. McClellan called me to look at the child's penis. I saw a cord tied around it, and the penis

was very much swollen and purple. I held it while the string was cut off.

Mrs. L. J. Chaffin testified, in substance, that she was present at the birth of plaintiff. Dr. Brooke was the attending physician. He received the child from its mother, and, after tying the ligature around the umbilical cord, handed it to Mrs. McClellan. In answer to Mrs. McClellan, Dr. Brooke said it was a boy. Mrs. McClellan nursed the child until she gave it to Dr. Brooke. She did not leave the room with the child. She handed it to Dr. Brooke, to see what was the matter with it, and he said the cord tied on the navel cord had slipped off. He and I tied another cord upon the navel cord. Dr. Brooke held the umbilical cord while I tied the string on it. Did not see any cord around the navel cord when I tied one around it.

Defendant testified in his own behalf, in substance, that he did not tie the ligature on the plaintiff's penis.

Most of the glands of the penis were destroyed, though in its mutilated state it answered for urinating purposes, and physicians thought it might, when the child was grown, be used for getting children, though under difficulties on account of the destruction of the glands.

Verdict and judgment for $5,500. The assignments of error are apparent from the opinions.

*Hare & Head,* for appellant.

I. The probable injury that may result to a child only two years old, in his ability to get children upon arriving at the proper age, should not be taken into consideration in estimating the damage sustained by the child from an injury to its penis. Defendant below asked the court to charge the jury that, "in estimating the damage, not to take into consideration any injury plaintiff may have sustained in his ability to get children when he arrives at the proper age," which the court refused.

II. The pleasure which a child under the age of puberty may experience in the act of copulation, when he arrives at the proper age, should not be taken into consideration in estimating the damage for an injury to its penis. Defendant below, in the fourth charge asked by him, requested the court to charge the jury "not to take into their consideration any damage that may have been done to plaintiff in his ability to copulate upon arriving at the proper age." This charge was refused.

III. An injury resulting from an innocent mistake or accident will not justify vindictive damages or smart money. Wallace *v.* The

Mayor, 2 Hilt., 440; Thompson's Carriers of Passengers, 573; Mayne on Damages, 57, note; 54 Tex., 125.

They argued at length that the verdict was not supported by evidence.

*J. R. Cowles* and *Throckmorton & Brown*, for appellee.

BONNER, ASSOCIATE JUSTICE.— Appellee Henry N. Clark, a minor, by his next friend, instituted this suit February 15, 1875, against appellant John Brooke, for damages, actual and exemplary, for an alleged act of gross negligence on the part of Brooke as physician and accoucher on the occasion of the birth of Clark.

On November 10, 1877, a trial was had, which resulted, upon verdict of a jury, in judgment in favor of Clark for $5,500, from which this appeal is taken.

During the pendency of the appeal defendant Brooke died, and motion has been made to dismiss the suit upon the ground that, being a personal action, it abated with his death.

Our statute enacts that a cause pending by appeal or writ of error in the supreme court shall not abate by the death of a party to the record, provided that this shall not apply to any suit or action in which the cause of action does not survive in favor of or against the legal representatives of a deceased person. Pasch. Dig., art. 6463; R. S., art. 1044.

In the recent case of Galveston City R. R. Co. v. Nolan, 53 Tex., 139, the conflicting decisions of this court upon this question were reviewed, and that of Gibbs v. Belcher, 30 Tex., 79, approved, to the effect that the original cause of action was merged into the judgment of the district court in favor of a plaintiff, and that such judgment was not vacated or opened by writ of error or appeal, but remained valid and subsisting until set aside, and constituted in favor of the legal representatives the cause of action.

The motion to abate will therefore be overruled.

The objection is raised in this court, that the court below failed, under appropriate instructions, to submit separately to the jury the questions of actual and exemplary damages, and to require them to respond accordingly in their verdict.

That this is the proper practice, was held in R. R. Co. v. Le Gierse, 51 Tex., 189, but the decision in that case did not turn upon that question.

In the later case of R. R. Co. v. Casey, 52 Tex., 112, it is said that "it is the proper practice in cases of this character to instruct the

jury to find separate verdicts, one as to the actual and the other as to exemplary damages. But the failure to do this when not excepted to, nor the proper instruction asked, would not of itself be sufficient to reverse the judgment."

But the other objection, also raised in this court, that the suit was prosecuted for the plaintiff by next friend and not by guardian, presents a much more serious question. Prior to our recent statute on this subject (Pasch. Dig., arts. 6969–6973; Laws 15th Leg., 187, secs. 134–138), in force at the date of the commencement of this suit and of the trial below, an infant who had no general guardian could, under our practice, sue by next friend.

Under former decisions of this court, the effect of these statutes was to supersede this practice, and, for the protection of the rights of infants, to require in such cases the appointment by the court of a special guardian, who should qualify by taking an oath and giving bond. Pucket v. Johnson, 45 Tex., 550; Ins. Co. v. Ray, 50 Tex., 511; Bond v. Dillard, id., 302. Without such protection their rights might be jeopardized and their estates wasted.

We are of opinion that the failure to comply with the requisites of the statute then in force in regard to the appointment of a special guardian for the minor plaintiff, is such fundamental error apparent of record, that when the objection is made, even in this court, it would require the reversal of the judgment. Bond v. Dillard, 50 Tex., 302.

This determination has not been reached without due regard to the fact that in this particular case it may materially affect the rights of the plaintiff.

That the law should be thus held, however, would perhaps not be seriously questioned had the minor plaintiff failed in the action.

Although it seems a hardship that a law which was intended for the protection of a minor should be invoked against his interest, yet, as has been aptly said, hard cases sometimes make bad precedents, and we feel it our duty to adhere in all cases to a sound general principle, rather than to deviate from it in the particular instance.

It is due the learned judge presiding and counsel to state that the above decisions, changing the former practice, were made subsequently to the trial below.

Judgment reversed and cause remanded.

REVERSED AND REMANDED.

[Opinion delivered April 23, 1880.]

## ON APPLICATION FOR REHEARING.

BONNER, ASSOCIATE JUSTICE.— This case comes before us on rehearing on the proposition that "the court erred in holding that the failure to appoint a special guardian for appellee in the court below was such fundamental error as would be considered when first made in this court, and being considered was fatal, and in reversing the judgment, and remanding the case for a new trial."

This proposition has been elaborately considered in the able briefs and arguments of counsel.

The objects intended by our former statutes (Pasch. Dig., arts. 6969–6973; Laws 15th Leg., 187, secs. 134–138) in regard to the appointment of special guardians were two-fold: *First*. That the minor, in addition to the general guardianship which the court itself, from its long established powers and duties, is required to give, should also have the protection of a special guardian, whose duty it was to examine in detail into the subject matter in regard to which the appointment was made; and for the faithful performance of which, oath, bond and security were required. *Second*. That the minor should have been so legally represented that the judgment, whether for or against him, should be a protection to the other party. The statute, though now repealed, was in our opinion a most salutary one.

Having been intended, however, as a shield for the protection of the minor, it should not be used as a sword to his injury. Although it should have been strictly enforced by the court, yet as this was not done in this case, but as the next friend was treated and recognized by the court as the proper representative of the minor, and the trial proceeded upon this theory without objection from the other party, we are, upon further consideration, of the opinion that it was an irregularity, but not such fundamental error as should require a reversal of the case when presented for the first time in this court. Particularly should it be so held when it is apparent, as in this case, that the interest of the minor has not been prejudiced by the failure to appoint a special guardian, and when, should the judgment be affirmed, his interest can still, if necessary, be protected by the appointment of a general guardian, or if reversed, the practice which required the appointment of a special guardian would not now prevail. If this should not be the rule, the other party, who was also in fault in not making the objection, could await the result of the trial. If favorable, acquiesce in it; if unfavorable, then object for the first time in this court.

The rights of minors, who in law are not capable of protecting

themselves, should receive a more liberal construction and protection than those of adults.

These considerations had great weight with the court on the original hearing, and the former decision was mainly based upon the previous case of Bond v. Dillard, 50 Tex., 303. A more careful examination of that case, however, shows that we misconceived the facts as applied to the one now under consideration.

In that case Isaac R. Dillard, who was plaintiff both in his individual right and as next friend of the minors — his interest to some extent conflicting with that of the minors,— at the August term, 1876, voluntarily took a nonsuit. At the succeeding trial term he was permitted to intervene, but as said in the opinion (50 Tex., 309), "So far as the record shows, this was done in his own individual right, and not in behalf of the minors, if he could appear for them at all as next friend." It did not affirmatively appear then that they were represented even by next friend, and in the language of the opinion, "the proceedings and judgment as to them seem to have been without lawful authority."

We are of the opinion that the rehearing should be granted, and it is accordingly so ordered.

REHEARING GRANTED.

[Opinion delivered June 24, 1881.]

## FINAL OPINION.

GOULD, CHIEF JUSTICE.— 1. The question of the effect of the death of the defendant pending this appeal was disposed of in the opinion of Justice Bonner, delivered April 23, 1880, to which reference is made.

2. So, also, the question growing out of the failure of the court to appoint a special guardian was disposed of in the opinion delivered June 21, 1881, on the occasion of granting a rehearing. Reference is here made to that opinion, and the views there expressed are adopted as the conclusions of the court on that subject, after hearing full argument thereon on the second hearing of the case. But whilst we decline to reverse the case, because of this omission, we think that the rights of the minor should yet be secured, and that no payment of the amount recovered other than a payment into court should be allowed, until a guardian of the estate of the minor shall have duly qualified.

3. It is claimed that the court erred in refusing to charge the jury "not to allow vindictive damage or smart money, if they found that the injury was the result of an innocent mistake or accident." An

examination of the charge given on the subject of exemplary damages shows that it embraced the substance of the instruction asked. The jury were only allowed to find exemplary damages in case they believed that, " in his conduct on that occasion, defendant showed such an entire want of care as to evince that he was probably conscious of the probable consequences of his carelessness and indifference to the danger to which plaintiff was subjected." They were told if they " did not believe that defendant evinced such a gross want of care as would manifest on his part an indifference to any injury likely to result to plaintiff therefrom," to find only compensatory damages.   Again, they were told if the " act was the result of a want of ordinary care and diligence," defendant was responsible only for actual damages.   Clearly, appellant has no ground to complain of the refusal of the charge asked on the subject of exemplary damages.

4. But it is said that the verdict is not supported by the evidence, and is excessive, etc.   In this connection the point is made apparently for the first time in this court, that, under the evidence, the court should not have submitted to the jury the question of exemplary damages.   If the injury to plaintiff was the result of defendant's negligence (and there was certainly evidence to support a verdict that it was), then we would be unable to say that the damages assessed so far exceeded the actual damage to plaintiff as to show that the verdict was the result of passion or prejudice, and was manifestly excessive.   The nature of the injury, the probable mental suffering which it may cause to plaintiff when he comes to years of maturity, were considerations which may have legitimately led the jury to the conclusion that the sum found was not more than would compensate plaintiff for the actual damage suffered.   In a case of this nature, where the actual damages may include mental suffering through life, the court can rarely set aside a verdict as excessive.   We are unable to see any legal ground for doing so in this case.

5. In regard to the objection now made, that the court erred in submitting to the jury the question of exemplary damages, we remark that the record does not show that this objection was made in the court below, nor is the point properly embraced in any assignment of error.   In this state of the record, and with a verdict which, if confined to actual damages, we are unable to set aside as excessive, it is by no means clear that the error, if it were error, would be fatal to the judgment.

But our opinion is, that the case as exhibited by the evidence called for a charge on the subject of exemplary damages.   The crim-

·inal indifference of the defendant to results was a fact which the jury were at liberty to infer from the gross mistake which he either made or permitted to be made, and the grievous injury which was liable to result and did result therefrom. If there was other evidence tending to negative any wrong intent or actual indifference on his part, still the existence or non-existence of such criminal indifference was a question of fact for the jury, and was rightly submitted to them. If the conduct of the defendant in the discharge of his duty as accoucher was so grossly negligent as to raise the presumption of his criminal indifference to results, we very greatly doubt whether it should avail to exempt him from exemplary damages, for him to show that he had no bad motive, and that he acted otherwise in a manner tending to show that he was not, at heart, indifferent. Where the act is so grossly negligent as to raise the presumption of indifference, evidence that in other matters connected therewith he had shown due care, and that actual indifference would have been in fact indifference to his own interest, should, we think, not be allowed for any other purpose than to be considered by the jury in fixing the amount of exemplary damages. But whatever may be the true rule on this subject, we do not think that there was such evidence negativing indifference on the part of defendant as made it improper for the court to charge on the subject of exemplary damages. Cochran v. Miller, 13 Iowa, 128, is authority for exemplary damages for gross negligence in a physician in treating a patient. See, also, Caldwell v. N. J. Steamboat Co., 47 N. Y., 282–296, as bearing on the subject of exemplary damages for negligence, in what cases the court should charge on the subject, and in what cases an erroneous charge thereon would be fatal to the judgment.

6. The application for a new trial on the ground of newly discovered evidence is so manifestly insufficient that it is not proposed to discuss it.

This case has received repeatedly our most careful consideration, and our final conclusion is that no error appears in the action of the court, and that the judgment be affirmed.

AFFIRMED.

[Opinion delivered May 12, 1882.]

## DISSENTING OPINION.

BONNER, ASSOCIATE JUSTICE.— In my opinion the facts in this case, under the rules of law allowing exemplary damages for gross negligence, did not authorize this character of damage; and as this element, under the charge of the court, may have largely influenced

the amount of the verdict, I feel it my duty to dissent, upon this point, from the decision of the majority of the court.

Considered as a breach of contract, exemplary damages were not recoverable. R. R. Co. v. Shirley, 54 Tex., 142.

Considered as a tort, the testimony fails to show that reckless indifference or evil motive upon which rests the rule of exemplary damages in such cases.

The rule is thus stated by a learned text-writer: " The damages recoverable for personal injuries will mainly depend upon the nature and character of the injury and the manner in which it was inflicted. If it was the result of mere negligence that amounts to little more than an accident, less damages are recoverable than in cases where it is of a willful or insolent character. Because, in the latter case, the jury may go beyond the actual damage and give something by way of example; while in the former they are restricted to the actual damage. The rule is that, whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of simple compensation for the wrong committed, but may give against the tortfeasor punitive or exemplary damages. Malice, in this rule of law, is not merely the doing of an unlawful or injurious act; the word implies that the act complained of was conceived in the spirit of mischief, or of criminal indifference to civil obligations." Wood's Mayne on Damages, 597, citing numerous authorities in notes; 2 Sedg. on Damages (7th ed.), 327, note, title Gross Negligence; Field on Damages, §§ 25, 78, 83–4; Shear. & Redf. on Negligence, § 600; Smith v. Sherwood, 2 Tex., 461; Cotton Press Co. v. Bradley, 52 Tex., 600.

In Milwaukee, etc., R. R. Co. v. Arms et al., Mr. Justice Davis, delivering the unanimous opinion of the court, after quoting the language of Mr. Justice Campbell in Philadelphia, etc., R. R. Co. v. Quigley, 21 How. (U. S.), 214, giving the above definition of malice in this connection, and stating that the rule, though announced in an action for libel, is equally applicable to suits for personal injuries received through the negligence of others, says: " Redress commensurate to such injury should be afforded. In ascertaining its extent, the jury may consider all the facts which relate to the wrongful act of the defendant, and its consequences to the plaintiff; but they are not at liberty to go farther, unless it is done willfully, or was the result of that reckless indifference to the rights of others which is equivalent to an intentional violation of them. In that case the jury are authorized, for the sake of public example, to give

such additional damages as the circumstances require. The tort is aggravated by the evil motive, and on this rests the rule of exemplary damages." 91 U. S., 493. To the same effect is Western Union Tel. Co. v. Eyser, reported in note to above case.

In Prickett v. Cook, Dixon, C. J., said: "Exemplary damages in cases of this nature can only proceed from gross and criminal negligence — such negligence as evinces upon the part of the defendant a wanton disregard of the safety of others, and which in law is equivalent to malice." 20 Wis., 378.

In Bannon v. B. & O. R. R. Co., Bowie, C. J., speaking for the court, says that the term gross negligence "implies malice and evil intention. Hence, in all questions of punitive or vindictive damages, the intention of the defendant is a material consideration." 24 Md., 124.

In Wallace v. The Mayor, etc., of New York, the rule is laid down that " the recovery of punitive or vindictive damages is allowed only where the act causing the injury has been willfully done; where the circumstances show that there was a deliberate preconceived or positive intention to injure, or that reckless disregard of the safety of preson or property which is equally culpable." 2 Hilton, 452.

In Neil v. Glanding it was said that "the injury not having been willful, there was no room for vindictive damages." 42 Pa. St., 499.

In Cochran v. Miller, 13 Iowa, referred to in the opinion of the court in the present case, the statement of facts is so meager that we cannot ascertain the circumstances of malpractice for which the physician was held liable for exemplary damages. Under our statute, to constitute a case of negligent homicide punishable as a crime, "there must be an apparent danger of causing the death of the person killed or some other." Pasch. Dig., art. 2238; Rev. Penal Code, art. 581.

This " apparent danger " necessarily implies a knowledge of the act committed and its probable consequences.

The cases quoted from above have been selected from those in which damages were sought for personal injuries from alleged gross negligence. From these, and others which could be referred to, it is believed that the true rule on this subject, and which is supported by sound principle, is that exemplary damages should be recovered in those cases only in which the act complained of was so carelessly performed as to show in fact, or by strong presumption, a reasonable knowledge of the danger accompanying it, and a reckless indifference to the probable consequences which might naturally result;

and not in those cases in which a mistake or mishap may unintentionally, though carelessly it may be, have happened. Although the act for which exemplary damages may be recovered in such cases is usually denominated gross negligence, it is not so much the negative act of *omission*, which constitutes negligence proper, as one which partakes more of a positive act of *commission*, which goes beyond the line of mere negligence, and becomes an affirmative act, done either intentionally in fact, or under such circumstances as that an intent to injure might reasonably be presumed, by which it becomes criminal or *quasi*-criminal in its nature. Cotton Press Co. v. Bradley, 52 Tex., 601.

The propriety of allowing exemplary damages at all has been denied by learned judges, and the doctrine should not be extended. Fay v. Parker, 53 N. H., 342; Pierce on Railroads, 307, and authorities cited in note 3.

The testimony in this case shows that the defendant was skillful in his profession; that he seemed anxious to discharge his whole duty; desired to be sent for to adjust the ligature should it become detached; no reason or motive is shown why he should carelessly, much less willfully, have caused the injury; on the contrary, his own interest and reputation, to say nothing of the ordinary promptings of humanity to render aid and not to inflict injury under such circumstances, would seem conclusively to have prohibited intentional wrong. He unfortunately may have committed the act with which he is charged; and if so, although he may be liable for actual damages, he should not, under the circumstances, be liable also for exemplary damages.