## W. J. Binyon, Jr. v. D. E. Smith et al.

Decided April 25, 1908.

1.—Writ of Error—Death of Defendant—Service of Citation—Statutes Construed.

After rendition of judgment in his favor in the trial court, and after the defendants in that court had seasonably filed their petition and bond for writ of error, the plaintiff died intestate; thereupon the plaintiffs in error filed an amended petition setting up the fact of the defendant in error's death, that he left no debts, that there had been no administration, and no necessity for any, and prayed for citation to the surviving wife and children. Held that, upon acceptance of service of citation in error by the surviving wife and children, the plaintiffs in error were entitled to prosecute their appeal. Rev. Stats., arts. 973, 1395, 1689, 1402, 1240 and 1399 construed.

2.—Master and Servant—Assumed Risk—Evidence.

In a suit by a servant against the master for· damages for personal injuries caused by a smoke stack falling upon the plaintiff while he was engaged in working upon the same, evidence considered, and held to justify the court in submitting the issues of assumed risk and contributory negligence to the jury.

3.—Partnership—Dissolution—Assumption of Liabilities.

· Where, upon the dissolution of a partnership, one of the partners assumed "all liabilities" of the firm, the retiring partner is entitled to a judgment over against such partner upon the rendition thereafter of a judgment against the members of the firm for damages for personal injuries inflicted during the existence of the partnership.

Error from the District Court of Tarrant County.  Tried below before Hon. Irby Dunklin.

*Orrick & Terrell,* for plaintiff in error.—If the defendant in error knew the situation surrounding the work to be done and knew the effect or probable effect of doing the work in the way in which it was done, and injury resulted, he assumed the risk and can not recover. Hilje v. Hettich, 95 Texas, 321; Texas, etc., Ry. Co. v. French, 86 Texas, 98; Ely v. S. A. & A. P. Ry. Co., 40 S. W., 174; St. L. & S. W. Ry. v. Smith, 63 S. W., 1064; Ladonia Cotton Oil Co. v. Shaw, 65 S. W., 693; Jones v. Galveston, etc., Ry. Co., 31 S. W., 706; Newnom v. S. W. Telegraph Co., 47 S. W., 669; Missouri, etc., Ry. Co. v. Spellman, 34 S. W., 299; Brown v. Miller, 62 S. W., 547; Currie v. M., K. & T. Ry. Co., 20 Texas Ct. Rep., 686.

If Stewart represented that there was no liability for the injury to Smith on the part of the firm, as a matter of law it can not be held that such liability when established came within the liability of the firm assumed by Binyon, especially when Binyon says that he bought on the faith of the statement of Stewart that there was no liability. 7 American & English Cyc. of Law (2d ed.), p. 365; 9 Cyc. of Law and Procedure, top p. 807, "Technical Wrongdoers;" Gulf, C. & S. F. Ry. Co. v. G., H. & S. A. Ry. Co., 83 Texas, 509; City of San Antonio v. Smith, 94 Texas, 271; Missouri, K. & T. Ry. Co. v. Vance, 41 S. W., 171.

*C. M. Templeton,* for defendant in error.

CONNER, CHIEF JUSTICE.—This suit was instituted by D. E. Smith against J. M. Stewart and W. J. Binyon, Jr., composing the partnership of the Stewart-Binyon Transfer & Storage Company, to recover damages for personal injuries received while in the employ of said partnership. He alleged in substance that about the 24th day of August, 1905, the defendants were engaged in moving a large engine, some boilers, and other attachments, among which was a large smokestack weighing about one thousand pounds; that the smokestack had become fastened between the wall of the building and the engine, one end being on the ground and the other in the air. That in order to extricate it the defendant, J. M. Stewart ordered plaintiff and one, McCarthy, to go underneath the smokestack and cut the rivets which joined the sections together; that while complying with this order, in some manner unknown to plaintiff, the smokestack broke from its fastenings and suddenly fell on the plaintiff, breaking his left hip. It was further alleged that the place to which plaintiff was ordered to do the work of cutting the rivets was one of great danger fully known to the defendants, but wholly unknown to plaintiff. That the defendants were guilty of negligence in ordering the plaintiff to work in said place; that said McCarthy was a foreman of defendants with authority to employ and discharge workmen and to direct and control plaintiff and other employes, and was directing and controlling the plaintiff at the time of the accident; that the injury was due to negligence on the part of McCarthy in neglecting to block up or brace said

smokestack, or to use some other precaution to prevent the same from falling upon the plaintiff while cutting it in two, and in failing to keep or provide a proper lookout to warn plaintiff in event said smokestack commenced to slip or fall.

The defendant Binyon pleaded the general denial, contributory negligence and assumed risk, and specially pleaded over against the defendant Stewart to the effect that Stewart was personally in charge of the work and alone directed it, and that as between him (Binyon) and Stewart he was guiltless, and prayed for judgment against Stewart in event the plaintiff obtained a judgment against the firm.

The defendant Stewart pleaded in substance the same general pleas as his codefendant and also specially against defendant Binyon that the firm had been dissolved and that by the terms of the dissolution Binyon expressly assumed the liabilities of the firm, and he prayed that in event the plaintiff should recover a judgment he (Stewart) should recover a like judgment against Binyon.

The trial resulted in a verdict and judgment for the plaintiff in the sum of two hundred and fifty dollars against both defendants, and in favor of the defendant Stewart over against Binyon for such part of the judgment as he might be required to pay.

By an independent counter proposition of the defendants in error, who have succeeded to the rights of D. E. Smith as hereafter stated, a preliminary question of practice has been raised of which we must first dispose. It appears from the record that after the rendition of the judgment in favor of D. E. Smith, and after plaintiffs in error had seasonably filed in the court below their petition and approved bond for the writ, but before the service of citation in error, the said D. E. Smith died intestate. Plaintiffs in error thereupon filed an amended petition setting up the fact of Smith's death, averring that he left no debts; that there had been no administration, nor necessity therefor, and praying for citation to issue to the surviving wife, Lucy A. Smith, and surviving children, Zene E. Smith, Zenus W. Smith, and Mary J. Smith, who were alleged to be the sole surviving heirs of D. E. Smith, deceased. The said wife and surviving children thereupon duly waived the issuance and service of citation in error, and have entered their appearance herein both by formal written waiver and by filing and urging briefs in this court.

The statute directs that service of the citation in error "shall be made by delivering to the defendant in error, and if more than one, then to each of them, in person, a true copy of such citation." See Revised Statutes, art. 1395. The statutes, however, do not seem to have expressly designated the persons upon whom the citation in error shall be served in cases where, as here, the defendant in the writ dies after the petition and bond have been filed but before service of citation upon him. After judgment, however, actions for personal injuries do not abate. (Revised Statutes, art. 973; Galveston City Ry. Co. v. Nolan, 53 Texas, 146; Gibbs v. Belcher, 30 Texas, 79.) Hence the adjudged right passes to the surviving wife and children of the deceased by our statute of descent and distribution. (Revised Statutes, art. 1689.) The surviving wife and children, then, are the proper parties in interest, and we see no reason why, in the absence of a devise or of adminis-

tration or of necessity therefor, they may not enter their appearance on appeal. The statute last above cited (Art. 973) expressly requires Courts of Civil Appeals, as also the Supreme Court, to proceed to adjudicate appeals by writ of error where a party to the record dies after the "writ of error has been served." In this case plaintiffs in error perfected their appeal when they filed their petition and error bond. (Revised Statutes, art. 1402; Vineyard v. McCombs, 100 Texas, 318.) It follows, we think, that plaintiffs in error, under the facts alleged by them, were authorized to further proceed in the prosecution of their appeal by causing service of citations in error on the surviving wife and children, as in the familiar case of a party defendant who dies before judgment. If so, those now defending could certainly accept service as they have done. (Revised Statutes, arts. 1240 and 1399.) Without further elaboration we are of the opinion that it is our duty to proceed to the determination of the appeal on its merits instead of dismissing it, as urged.

The principal contention before us on the merits is, that the evidence is insufficient to sustain the verdict and judgment. It is insisted that D. E. Smith knew the situation surrounding the work to be done and knew the effect or probable effect of doing the work in the way in which it was done, and that he hence assumed the risk. From which it is insisted the court erred in refusing to give the peremptory instruction in favor of plaintiffs in error, as requested by them, or that at least the court should have granted the motion for a new trial.

The facts, briefly stated, are that D. E. Smith, as alleged in his petition, was working for plaintiffs in error and had been for some thirty days prior to the time of his injury engaged in moving heavy articles; that at the time of the accident the company was engaged in taking the boilers and machinery out of the burned ruins of the old packing house in North Fort Worth, Texas; that Smith had been working in the building on the work of removing the wreckage for a week; his particular employment at the time being the cutting of pipe; that in moving the debris a piece of four-foot smokestack of sheet iron from three-sixteenths to one-fourth inch in thickness had become fastened or wedged in between the west wall of the building and the back end of the furnace wall. The space between the two walls named was about four or five feet. The pipe was about twenty-five or thirty feet long in sections of five feet each riveted together; the stack lying north and south, the south end resting on the ground and the north end elevated in the air. The height of the north end of the stack above the ground varied, according to the evidence, from six to fifteen feet. The stack was "catacornered," as expressed by some of the witnesses, and as a result was wedged between the walls as stated. The work done was ordered by plaintiff in error Stewart, in person. Stewart testified that he had long experience in moving heavy articles of the kind and in handling smokstacks, and knew that the work ordered was dangerous; that he directed that the stack should be blocked up. Smith testified, however, that if any such direction was given by Stewart, he did not know it, and further to the effect that he had no experience in handling smokestacks of the kind, although in a general way he knew that it

was dangerous to go under the stack, and knew that hammering thereon would naturally tend to loosen the stack from its place. There was evidence, however, tending to show that efforts had been made to move the stack before the order to cut the rivets, and Smith testified to the effect that his purpose and that of McCarthy was to cut some of the rivets on the bottom side and then step from under the stack and cut those on the sides and higher up, and thus permit the stack to sink or fall. Smith also testified that as they approached the stack for the purpose of cutting the rivets he tapped it several times with his hammer in order to ascertain if it was fast. There was also evidence tending to show that there was a window in the west wall of the building about six or eight feet back of Smith and through which a person, if stationed there, could have observed whether the stack was slipping after McCarthy and Smith began working on it. Smith denied that he observed that the stack was becoming loosened from its wedged condition, but another workman testified that he did and called Stewart's attention to the fact, and was by Stewart directed to "go out there and tote some blocks up there."

While, as may be seen from the above synopsis of the evidence, Smith testified in a general way that he knew it was a dangerous place in which to work, and that the probable effect of hammering on the smokestack was to make it fall, it further appears that repeated efforts to loosen it had been unsuccessfully made before, and that Smith was without much experience in that kind of work. The testimony, as we think, tends to show that Smith, after the tests made by himself, thought that he could safely cut a number of the rivets on the under side before the stack would be so weakened as to give way, and we think that it was for the jury to say whether under all of the circumstances, Smith was guilty of contributory negligence. The testimony of Stewart indicates that he knew that the smokestack should have been blocked up or that at least some other precaution was taken, and the inference of negligence from his failure to see that the stack was properly blocked up, or that Smith and McCarthy were notified of the loosening of the stack after he (Stewart) had been informed of it, is very strong. So that on the whole, and after a careful review of all of the testimony, we are of opinion that the court properly refused the peremptory instruction in favor of plaintiffs in error and properly overruled their motion for a new trial.

The only remaining question presented by the assignments arises under the cross plea of plaintiff in error Stewart, but it seems clear to us from the testimony that at the time of the dissolution of the firm of Binyon and Stewart it was expressly agreed between them that Binyon should assume "all liabilities" of the firm. And aside from the import of the terms tending to include the cause of action in behalf of D. E. Smith, there is evidence tending strongly to show that Smith's suit (instituted a short time after the dissolution) was expressly contemplated and discussed as a possible liability, although Stewart then insisted, as he did throughout the trial, that there was no liability, in as much as he was guilty of no negligence. This evidently was but an opinion and it nowhere appears that Stewart falsely represented to Binyon any of the facts. Indeed, no allegation of this character is

made. We therefore find no error as assigned in the charge of the court submitting this issue.

We conclude that all assignments of error should be overruled and the judgment affirmed.

*Affirmed.*

Writ of error refused.