| 52 | 587 |
|----|-----|
| 74 | 294 |
| 75 | 8 |
| 76 | 93 |
| 52 | 587 |
| 81 | 519 |
| 52 | 387 |
| 87 | 354 |

SOUTHERN COTTON PRESS AND MANUFACTURING CO. v. JAMES R. BRADLEY.

1. PLEADING.—In an action against.a corporation for a trespass, brought in the county in which the trespass is charged to have been committed, an allegation of residence of defendant is not material to show that the court had jurisdiction of the person.

2. PLEADING—ABATEMENT.—A petition filed.by the husband to recover damages for the wrongful killing of his wife, did not negative the fact that other persons were entitled to damages under the statute, and contained no allegation that suit was brought for the benefit of others in interest: *Held*, There being nothing apparent on the record showing the interest of others, the objection could not be raised on demurrer.

3. CONTINUANCE.—The absence of a female witness is no cause for continuance, when no proper diligence has been used to procure her evidence by deposition.

4. EVIDENCE—PRACTICE.—The provisions of a law of Texas which, by its terms, is a public act, cannot be read as evidence to a jury.

5. EXEMPLARY DAMAGES.—Exemplary damages for killing a member of one's family were unknown to the common law, and originated in the idea rather of punishment to the offender than of recompense to the sufferer.

6. SAME.—Cases in which exemplary damages are allowed, being *quasi*-penal in their character, should receive the careful consideration and scrutiny of the courts.

7. NEGLIGENCE.—The standard by which to test the question of negligence *vel non*, is the common experience of mankind, and implies generally the want of that care and diligence which ordinarily prudent men would use to prevent injury under the circumstances of the particular case.

8. GROSS NEGLIGENCE.—A charge of the court which first assumed a certain state of facts as constituting ordinary negligence, and which then instructed the jury that "gross negligence is a greater or higher degree of negligence than ordinary negligence": *Held*, Error, as containing no definition of gross negligence.

9. SAME.—Gross negligence is that entire want of care which would raise a presumption of a conscious indifference to consequences. Such indifference is morally criminal, and if it leads to actual injury, may well be regarded as criminal in law.

10. SAME.—See statement and opinion for facts held not to constitute gross negligence.

11. DAMAGES.—The statute (Rev. Stats., art. 2909) which authorizes a jury in a suit for damages for an injury resulting in death to give such damages as they may think proportioned to the injury, refers not to the pain and suffering caused by the injuries to the deceased, but to the respective losses to the surviving relatives resulting from the death, and who are entitled to sue. A charge of the court which left the jury to infer a different construction of the statute : *Held*, Error.

12. CHARGE OF COURT.—The judge should not erase and interline a charge asked on the trial of a cause without the consent of the attorney who presents it. If he desires to give the charge asked in a qualified form, he should pass on the charge as presented, and give it, or not, in a qualified form, as a special and distinct charge.

APPEAL from Galveston.    Tried below before the Hon. William H. Stewart.

In this case, the counsel having failed to agree upon a statement of facts, the presiding judge certified to eighty-two pages

of questions propounded to witnesses on the stand and their answers thereto, preserved by a stenographer, as the statement of facts. When no fact could be certified to, sufficiently established by evidence, as required by rule 71, to obviate incorporating in the record such detail of proceedings, the embarrassment of reporting this case will be readily understood; for a like detail of proceedings cannot be ventured on in publishing the case.

The suit was brought by James R. Bradley, who on February 24, 1879, filed his petition in the District Court of Galveston county against the Southern Cotton Press and Manufacturing Company, located at Galveston, claiming that on the 13th of February, 1879, at about half-past 7 o'clock P. M., while his wife, Margaret Bradley, now deceased, was passing over a plank bridge, in a public thoroughfare, across the gutter at the intersection of Post-office and Thirtieth streets, in Galveston city, the servants and agents of defendant in charge of its engine criminally and recklessly, without signal or warning, blew out or let off all the steam and boiling water contained in the boilers and engines of defendant, used by it in compressing cotton in the factor's press, one of the cotton sheds and compresses of defendant, located at the intersection of said streets, which steam and hot water passed through an escape-pipe attached to the engine and emptied into an air-tight plank flume that extended along and into the gutter to within six and one-half feet of said plank bridge, which was about one hundred and ninety feet from said engine; that when plaintiff's wife was on the middle of said bridge the steam and boiling water burst from the mouth of the flume suddenly, and with such force that his wife was so frightened, blinded, and scalded that she was knocked down and precipitated with great force into the gutter, and the boiling water rushed over her, covering and scalding her, from which injury she died on February 20, 1879, at the Galveston city hospital. He claimed damages in the sum of $50,000 for the wrong and injury, which he alleged to be wanton, cruel, and criminal.

Defendant excepted generally, and answered by general denial.

Answering specially, defendant pleaded that if the plaintiff's wife received any hurt. or damage at the place described, it was received through her own carelessness, negligence, and indifference; that she was an habitual drunkard, and had been under the influence of intoxicating liquor for two weeks continuously before February 13, 1879, and had by the use of intoxicating liquor become stupefied, and was in an unfit state to be walking in the public streets, and was so on February 13, 1879, when she received the injuries from which plaintiff alleges she died; that her carelessness and negligent conduct produced the accident.

On October 10, 1879, the court overruled defendant's exceptions.

On October 30 the case was called for trial on the facts; defendant moved for continuance; motion overruled. Case tried before a jury, and resulted in a verdict for plaintiff for $12,500.

The evidence showed that on February 13, 1879, at about 8 o'clock at night, a woman came from Thirty-first street to Post-office street, in Galveston, and walked along Post-office street to Thirtieth street; that it was a dark night, but a light from a lamp-post and another light used at the cotton press enabled a person to see across the street at the intersection of Thirtieth and Post-office streets; that there was a small gutter three or four feet wide at the intersection of said streets, where the lamp-post was situated; that over this gutter, where it crosses Post-office street, is a plank culvert, which ends at the sidewalk where the lamp-post is situated, and a small plank bridge about three feet wide and four feet long over the gutter at a distance of about six and a half feet from the end of the culvert; that there is no cover over the gutter from the end of the culvert to the small bridge; that there was a vapor. rising from the gutter to the height of about three and a half feet, which could be seen across the street; that the woman

walked across the street to the small bridge; that the defend-
ant's press was through blowing off steam from the boiler
when she reached there; that the steam from the boiler had
gone when she reached Post-office street; that when she reached
the gutter, where the steam was rising about three and a half
feet high, she stepped off the bridge into hot water in the gut-
ter; turned over in the gutter about three times, got up, and
came out; then walked around to the culvert, and in attempt-
ing to get from the 'end of the culvert to the sidewalk, fell a
second time into the hot water in the gutter head-foremost,
when she was pulled out.

On the same night, and very shortly after this, Margaret
Bradley was seen near the small bridge with her clothing wet,
and in a condition of mental stupefaction, which induced her
arrest and incarceration in the prison that night, where she was
found by her husband next morning. By him she was removed
to the hospital, where, after lingering several days, she died.
According to her husband's testimony, she told him during a
lucid interval that she would die; that when she left Thirtieth
street and got to the crossing something burst out and knocked
her into the gutter, and she did not know what it was. The
evidence showed that the husband made conflicting statements
as to the cause of his wife's injuries. From her own state-
ment and other testimony, it would seem clear that Mrs. Brad-
ley was the woman who had fallen into the gutter. When
found at the jail, the morning after the injury, her face was
blistered, except the eyes and mouth, as from a burn; her
arms and legs in a like condition, the skin being peeled off.
According to the testimony of the attending physician, the
inside of her mouth and throat were burned, and her death
was occasioned by a burn from some scalding liquid or steam.
When shrouded, it was discovered that serious bruises were
upon her hips and thighs, as though, in the opinion of the wit-
nesses, she had been beaten or kicked.

The place where the injury was received was surrounded
with houses, it being in a settled portion of the city. The

company was in the habit of blowing off steam from its engine and emptying into the gutter through the flume the hot water from its boilers, which contained two or three thousand gallons, about the hour of the evening when the injury was sustained. The flow of hot water always followed letting off the steam, and there was no evidence showing affirmatively an evil purpose on the part of the employees of the company in letting off the steam and water. No accident of a similar kind had occurred before, though there was evidence that witnesses had cautioned females not to go about the place at the hour when steam was blown off, and that the noise suddenly made on such occasions would cause a person of ordinary nerve, if on the bridge, to lose presence of mind.

There was evidence to the effect that Margaret Bradley had for some days been drinking liquor to excess, and that she was drunk on the night she was fatally injured, though on this point the evidence was conflicting. Other and more numerous witnesses gave her an exemplary character for sobriety. Arnold, who had charge of the cotton press, testified that no one could fall into the gutter where the woman fell, except through carelessness.

Counsel for defendant offered to read to the jury certain sections of the charter of the city Galveston, which was not permitted. This ruling was assigned as error.

The interlineations made by the court in charges asked by defendant are sufficiently referred to in the opinion.

The charge of the court to the jury was as follows:

"GENTLEMEN: Negligence is the want of such caution as is usually observed by persons generally in their acts. Gross negligence is greater or higher degree of negligence than simple or ordinary negligence. If you believe from the evidence that the plaintiff's wife, Mrs. Margaret Bradley, by her own negligence, contributed to the injuries complained of, then the plaintiff is not entitled to a verdict for any damages. If you believe from the evidence that the plaintiff's wife, Mrs. Margaret Bradley, was injured by the willful act, or omission, or

gross negligence of defendant, and that such injuries caused her death, and if you further do not believe from the evidence that Mrs. Bradley, by her own negligence, contributed to her injuries, then the plaintiff would be entitled to your verdict for such reasonable exemplary damages as you believe to be proportioned to such injuries.

W. T. STUART,
*Judge 26th Jud. Dist.*"

*A. R. Campbell,* for appellant.

I. The petition should have set forth clearly the residence of the defendant. (Paschal's Dig., art. 1427; Rev. Stats., art. 1195.)

II. The plaintiff's action being founded on the statute, the petition should either have alleged that plaintiff is the only person entitled to damages under the statute, or should have shown that the action was brought for the benefit of all who were entitled, and who they were. (Paschal's Dig., art. 16; Rev. Stats., arts. 2901, 2909; Railway Co. *v.* Moore, 49 Tex., 45; G., H. & S. A. Railway Co. *v.* Le Gierse, 51 Tex., 189; Sedg. on Stat. and Const. Law, 62; Thurston *v.* Prentiss, 1 Mann., (Mich.,) 200.)

III. The court erred in overruling defendant's application for a continuance. (Rev. Stats., arts. 1276, 1277, 2211.)

IV. The court erred in refusing permission for defendant to read in evidence sections of the Galveston city charter. (Schular *v.* Hudson River Railroad Co., 38 Barb., 653.)

V. The court erred in charging the jury that negligence is the want of such caution as is usually observed by persons generally in their acts. (Houston and Texas Central Railroad Co. *v.* Oram, 49 Tex., 346; Shear. & Red. on Neg., sec. 20; Houston and Texas Central Railroad Co. *v.* Gorbett, 49 Tex., 581.)

VI. The court erred in charging the jury that gross negligence "is a greater or higher degree of negligence than simple or ordinary negligence." (Houston and Texas Central Rail-

road Co. *v.* Oram, 49 Tex., 346; Houston and Texas Central Railroad Co. *v.* Gorbett, 49 Tex., 581; Shear. & Red. on Neg., secs. 20–34, 42, 412.)

VII. The plaintiff cannot recover damages proportioned to the injuries which caused his wife's death. The damages he is entitled to, if any, are such damages as the jury may think proportioned to the injury resulting to plaintiff from the death of Mrs. Bradley. (Paschal's Dig., art. 16; Rev. Stats., art. 2909; The Houston and Texas Central Railroad Co. *v.* Nixon, *supra*, 19.)

VIII. The court should either have given the charges asked by defendant, or refused to give them. (Rev. Stats., arts. 1319, 1320.)

*Wheeler & Rhodes*, for appellee.

I. The proposition is not true that the petition does not set forth clearly the residence of the defendant, as we state in our answer to appellant's statement of the case. The *locus* and all the surroundings of defendant, the place where it did business and where the damage was done, are all set out with great particularity in both the petition and exhibit attached thereto, not only stating that the defendant did business as a cotton compress in the city of Galveston, but the very streets on which said business is and was conducted and carried on were set out in the petition. The statute referred to in Paschal's Digest and in the Revised Statutes relates to suits against individual defendants whose right to be sued, except in special cases, in the county of their residence, is specially guarded by law, and not to a case against a defendant, such as a corporation, which can have no residence, and which is sued, as is shown by the petition in this case, in the city and county in which it carries on business. (Act of March 21, 1874, p. 31; Rev. Code, art. 1198, sec. 21, title Venue of suits.)

II. It being a fact that Bradley was at the time of the killing of his wife by defendant the only person in existence who had an interest in her life, it was idle to have set out in the

petition that there was no other person interested in a recovery on account of such death and entitled to participate in any recovery of damages on account thereof. This was matter to have been plead in abatement of the suit by the defendant, and it was not done because it was entirely unsupported in fact.

III. It is alleged that error was committed by the court in overruling defendant's motion for a continuance. To confess surprise at such a proposition, emanating from counsel of such respectability as that of appellant, is, in the language of Mrs. Sarah Gamp, "to draw it mild"; the only witness whose absence could possibly be complained of being a female, for whom a subpœna was only issued the day before trial and served on that day, which summons the witness (Mrs. Ryan) disregarded, as it was her privilege to do under the statute. The motion for a continuance fails to show when the subpœna was issued for Mrs. Ryan, and, in failing to show this, fails to show that diligence which the law expressly requires should be shown by any party seeking to continue a cause.

IV. It is idle to talk to an intelligent court, in a case like this, about damages proportioned to the injury resulting to plaintiff from the death of Mrs. Bradley, as though the matter under discussion was akin to liquidated damages in the matter of a breach of a bond or covenant, or other kindred matter. The court, in its direction to the jury about reasonable exemplary damages, reached out as far in favor of the defendant as there was either warrant, authority, or precedent for, and perhaps a little further in the use of the word "reasonable." Appellant would measure the value of this woman to her husband by the most sordid and parsimonious standard of dollars and cents.

V. It mattered not, either to Bradley or his unfortunate wife, whether appellant knew that she was near said gutter or not when the water was being emptied therein. The gross negligence of appellant consisted in turning the hot water loose in the street of a populous city without regard to any damage which might be done thereby. We fail to see the remoteness

of a discharge, five minutes before, of hot water in a volume of thousands of gallons under a foot-crossing, and into which, five minutes after such discharge, this woman fell in crossing such foot-crossing and received her death.

VI. We positively assert that contributory negligence cannot be established by the record. The proof of drunkenness wholly failed at the trial, in so far as bringing the very questionable proof adduced on this branch of the case down to within forty-eight hours of the casualty; besides, the jury are the sole judges, under the law, of the weight of testimony and the credibility of witnesses. The proof of bad habits on the part of Mrs. Bradley being at best most questionable, when weighed in connection with the testimony of those who had known her for years, directly of a contradictory nature, was evidently disregarded by the jury. We assume that their province in this particular will not be called into question by the court.

VII. That the damages assessed by the jury are excessive.

We think this proposition so fully answered by the case of Houston and Great Northern Railroad Co. *v.* Randall, 50 Tex., 254, as not to require answer at our hands. In the case referred to, this court affirmed a judgment of the lower court for $12,000 for the loss of a limb. Certainly the life of a good woman is worth to her husband the sum of $12,500. The proof, on the contrary, warrants the opinion that the defendant-company was, and still is, utterly reckless of the consequence of their act in turning thousands of gallons of boiling water into the streets of a populous city.

BONNER, ASSOCIATE JUSTICE.—The first error assigned in this case is, that "the court erred in overruling defendant's exception to plaintiff's petition." Under this, appellant submits the two following propositions:

"The petition should have set forth clearly the residence of defendant.

"Plaintiff's action being founded on the statute, the petition

should either have. alleged that plaintiff' is the only person entitled to damages under the statute, or should have shown that the action was brought for the benefit of all who were entitled, and who they were."

The defendant was a corporation, and, as such, could be sued either in the county of its domicil, or in the county where the alleged trespass occurred. (Acts 14th Leg., p. 31; Rev. Stats., art. 1198, sec. 21.)

This trespass was averred to have been in the county of Galveston, where the suit was instituted, and hence the allegation of residence of defendant was not material to show that the court had jurisdiction of the person.

As to the other proposition: It was not apparent of record that there were other parties in interest, so that this question could have been raised by demurrer, and there was no plea in abatement alleging the fact.

The only objection interposed was a general demurrer.

Under the circumstances, we do not think either proposition well taken. (March *v.* Walker, 48 Tex., 376.)

The second error assigned is, that "the court erred in overruling appellant's motion for a continuance."

Under the circumstances of the case as finally tried, the application related only to the testimony of Mrs. Ryan, a female witness, whose deposition was not attempted to be taken.

As the statute provided that this could be done, and as she was not compelled to obey a subpœna, there was no proper diligence used to have entitled appellant to a continuance. (Paschal's Dig., art. 3726; Rev. Stats., art. 2218.)

The third error assigned is, that "the court erred in refusing to permit defendant to read in evidence to the jury the following sections in the charter of the city of Galveston: Title IV, article 1, CITY COUNCIL, POWERS AND DUTIES, secs. 34, 35, 41, 106."

By the express terms of the charter itself, it had the force and effect of a public act, and, as such, the court would take'

judicial notice of it, as of any public statute, and apply the law arising therefrom to the facts of the case.

There was no error in the action of the court refusing to permit the charter to be read in evidence to the jury.

The fourth, fifth, and sixth errors assigned present the material questions in the case, and will be grouped and considered together.

Fourth. The court erred in charging the jury, "that negligence is the want of such caution as is usually observed by persons generally in their acts."

Fifth. The court erred in charging the jury, "that gross negligence is a greater or higher degree of negligence than simple or ordinary negligence."

Sixth. The court erred in charging the jury, "that if you believe from the evidence that the plaintiff's wife, Mrs. Margaret Bradley, was injured by the willful act, or omission, or gross negligence of defendant, and that such injuries caused her death; and if you further do not believe from the evidence that Mrs. Bradley, by her own negligence, contributed to her injuries, then the plaintiff would be entitled to your verdict for such reasonable exemplary damages as you believe to be proportioned to such injuries."

The exceptions of appellant to the charge of the court bring the same under review.

The charge is very brief, and, if it were otherwise unexceptionable under the evidence, is not such a full and satisfactory presentation of the law of gross and contributory negligence, and of exemplary damages and the measure of the same, as would enable an ordinary jury to fully comprehend their meaning, and make the proper application to the facts in evidence.

It is evident from the case as made by the plaintiff, the charge of the court, and the very large amount of the verdict, more than that usually allowed by legislation in many of the States for injuries resulting in death, that the same must have been for exemplary damages.

Such damages, in this character of case, were unknown to

the common law, and are generally placed upon the ground, not that the sufferer is to be recompensed, but that the offender is to be punished. (Milwaukee Railroad Co. v. Arms, 1 Otto, 492; Sedg. on Meas. of Dam., 4th ed., ch. 18 and note; Smith v. Sherwood, 2 Tex., 463; Cole v. Tucker, 6 Tex., 268.)

Being both unknown to the common law and *quasi*-penal in their character, the cases in which exemplary damages are allowed should receive the careful consideration and scrutiny of the courts.

This suit is instituted under the provisions of section 26 of article 16 of the Constitution of 1876, which reads as follows: "Every person, corporation, or company that may commit a homicide through willful act, or omission, or gross neglect, shall be responsible in exemplary damages to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide." (Rev. Stats., art. 29.)

The standard to test the question of negligence *vel non*, is the common experience of mankind, and implies generally the want of that care and diligence which ordinarily prudent men would use to prevent injury under the circumstances of the particular case. (Milwaukee Railroad Co. v. Arms, 1 Otto, 495; Railway Co. v. Oram, 49 Tex., 346.)

The Supreme Court of the United States, those of several States of the Union, and some of the highest English courts very much doubt the propriety of the usual distinction of slight, ordinary, and gross negligence, said to have been derived from the Roman law; and some of the ablest commentators upon that law and upon the civil code of France have wholly repudiated the theory, as without foundation on principles of natural justice, useless in practice, and presenting inextricable embarrassment and confusion. (Steamboat New World v. King, 16 How., (U. S.,) 474; Milwaukee Railroad Co. v. Arms, 1 Otto, 494.)

Our Constitution, however, in terms adopts the distinction,

and in a case thereunder the jury should be so instructed by the court that they can properly apply the facts. As said by the Supreme Court of the United States in the case of Railroad Co. v. Arms: "It is insisted, however, that where there is 'gross negligence' the jury can properly give exemplary damages. There are many cases to this effect. The difficulty is, that they do not define the term with any accuracy; and if it be made the criterion by which to determine the liability of the carrier beyond the limit of indemnity, it would seem that a precise meaning should be given to it." (1 Otto, 493.)

Although much embarrassment has arisen from the attempt to define the term, yet, as it is the very gravamen of the complaint in this case, unless defined the jury would be left to pass upon most important rights without proper legal guidance. (Hyatt v. Adams, 16 Mich., 199.)

This was evident to the learned judge presiding, and hence he attempted to define it in his charge.

The charge first assumes a certain state of facts as constituting ordinary negligence, and the jury are then instructed that gross negligence is a greater or a higher degree of negligence than ordinary negligence.

It would be a natural consequence that gross negligence would be a higher, as slight negligence would be a lower, degree than ordinary negligence; but this general definition by comparison with ordinary negligence is not a satisfactory one, particularly when the degree of negligence to be understood by the jury is gross and not ordinary negligence. The one has as well-defined legal signification as the other, and the definition of the particular one under consideration should embrace its own marked legal characteristics.

Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise a presumption of a conscious indifference to consequences. Such indifference is morally criminal, and if it leads to actual injury may well be regarded as criminal in law. (Shear. & Red.

on Neg., sec. 600; Milwaukee Railroad Co. *v.* Arms, 1 Otto, 495.)

A mere act of omission or non-feasance, to be punishable by exemplary damages, should reach the border-line of a *quasi-criminal* act of commission or malfeasance.

The testimony in this case tends to prove that the cotton press of appellant had been in use for some time; that it had been accustomed to discharge the steam and water as was done in this instance; that this was with the implied, if not the express consent and authority of the city of Galveston; that this was the first time an injury had happened to, doubtless, the many parties who had passed that way.

Under the circumstances of the case as presented by the record, we are of opinion that, even had there not been error in the charge as given, the plaintiff did not make out such a case of gross negligence as was contemplated by the Constitution to have entitled him to recover exemplary damages. (Milwaukee Railroad Co. *v.* Arms, 1 Otto, 495, note; Jackson *v.* Schmid, 14 La. Ann., 806.)

We are further of opinion, that the portion of the charge excepted to by the sixth error assigned, was calculated to mislead the jury, as they very probably inferred therefrom that the damages which might be recovered were to be proportioned to the injuries received by Mrs. Bradley.

The expression, "proportioned to such injuries," found in the charge, is used substantially in our statute allowing compensatory damages for injuries resulting in death. (Paschal's Dig., art. 16; Rev. Stats., art. 2909.)

These statutes, following Lord Campbell's act, in giving the rule to measure such compensatory or actual damages, provide that "the jury may give such damages as they think proportioned to the injury resulting from such death, and the amount so recovered shall be divided amongst the person or persons entitled," &c.

This evidently means in proportion to the respective losses to the several parties entitled to recover, and not, as the jury

might reasonably have inferred from the charge, in proportion to the pain and suffering caused by the injuries to the deceased. (March *v.* Walker, 48 Tex., 376.)

The circumstances of the death might be proper for the consideration of the jury, who, it is presumed, might assess greater damages when the injury was willfully committed, under circumstances of aggravation, than when committed by the mere negative act of negligence. In this sense the damages might be proportioned to the injury, but not in the sense of the pain and suffering caused to the deceased.

It is assigned as error, that the court erred in erasing and interlining certain special charges asked by the defendant and in giving them to the jury, thus changed, as charges asked by the defendant.

It is the correct practice, when a special charge is asked, that the court give or refuse it as asked, or, if the judge desires to give it in a qualified form, to make the change separately and distinctly from the charge as asked, and not, without the consent of the attorney, by erasure and interlineation.

It is the right of the party asking a special charge to have the same kept distinct from any qualifications made by the judge presiding, so that it may clearly appear to the appellate court what the charge was as asked, and what modifications, if any, were made by the court below.

Upon inspection, however, of the original charges asked in this case, and which have been sent up with the record, if they were properly asked in the first instance, we do not find such material changes as demand a reversal on this ground.

For the other errors above indicated, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.