## JOHN BROOKE vs. HENRY N. CLARK, BY NEXT FRIEND.

### SUPREME COURT, AUSTIN TERM, 1882.

1. *Practice in Supreme Court.*—In a personal action, where defendant dies after judgment in the court below, the action does not abate by such death; the original cause of action merges into the judgment, and is not opened or vacated by appeal on writ of error, but remains valid and subsisting until set aside.

2. *Same—Damages—Actual and Exemplary.*—It is the better practice for the court, by appropriate instructions, to require the jury to return verdict distinguishing between what are allowed as actual and what as exemplary damages; but a failure to do so, where there is no exception to the charge on that ground, nor the proper instruction asked, such failure on the part of the court will not be cause for reversal of the judgment.

*Same—Guardian ad litem.*—Under the operation of articles 6969–6973, Paschal's Digest, a minor could not sue by next friend, and a suit brought while said articles were in force, by a minor, in his own name, or by next friend, without the appointment of a guardian *ad litem*, was without authority of law, is fundamental error, and will cause reversal of judgment when taken, for the first time, in this court.

OPINION ON REHEARING—After a fuller consideration of the subject of arts. 6969–6973, named in the original opinion, it is concluded by the court that the failure to appoint a guardian *ad litem* was an irregularity only, and not such fundamental error as should work a reversal of the case, when objection thereto is taken for the first time in this court, particularly so where the rights of the minor have not been prejudiced by the omission to appoint such a representative for him.

### FINAL OPINION.

1. The question as to the effect of the death of appellant pending appeal was passed upon in the original opinion. The suit does not abate.

2. So the question of the necessity of appointing a guardian *ad litem* for a minor plaintiff, and the failure to do so, was disposed of in the opinion granting a rehearing in this case. It is an irregularity, and must be taken advantage *in limine*. It is not fundamental error; still, in such case, the rights of the minor should be guarded by the appointment of a bonded guardian of his estate before any money is paid over, unless it be paid into court.

3. *Exemplary damages* may be allowed where defendant, in his conduct on the occasion complained of, shows such an entire want of care as to evince an indifference to the probable consequence of his act—such a gross want of care as would manifest on his part an indifference to any injury that might result to the plaintiff therefrom.

4. *Same.*—Simply "a want of care and diligence" will not justify the allowance of punitory damages.

5. *Fact Case.*—See the facts which are held sufficient to support the finding of the jury allowing exemplary damages.

6. *Same.*—But on the facts in this case the court is not prepared to say that the amount found by the jury is in excess of compensatory damages, in the finding of which the jury was authorized not only to consider the actual injury, but also in connection therewith the mental suffering which it may cause to plaintiff, when he comes to the years of maturity.

5. *Instruction as to exemplary damages.*—Where the court submitted to the jury the question of exemplary damages, and the defendant made no objection thereto, and did not assign the same as errror, and where the verdict returns damages which it confined to actual damages, were not so excessive as to justify the court in setting it aside on that ground, such instruction will not be fatal to the judgment; but it is the opinion of the court that the facts of this case called for a charge on the subject of exemplary damages.

### JUSTICE BONNER, DISSENTING.

1. Reckless indifference or evil motive are essential to the allowance of exemplary damages.

2. Gross negligence implies malice and evil intention; hence, in all'questions of punitive, exemplary or vindictive damages, the intention of the defendant is a material consideration.

3. The act for which exemplary damages may be recovered for gross negligence is not so much the act of *omission*, which constitutes negligence proper, as one which partakes more of a positive act of *commission*, which goes beyond the line of mere negligence and becomes an affirmative act, done either intentionally or under such circumstances as that an intent to injure may be presumed, by which the act becomes criminal, or *quasi* criminal, in its nature.

Appellee, Henry N. Clark, a minor, by his next friend, instituted this suit February 15, 1875, against appellant John Brooke, for damages, actual and exemplary, for an alleged act of gross negligence upon the part of Brooke as physician and accoucher on the occasion of the birth of Clark.

On November 10, 1877, a trial was had, which resulted, upon a verdict by jury, in judgment in favor of Clark for $5500, from which this appeal is taken.

During the pending of the appeal defendant Brooke died, and motion has been made to dismiss the suit upon the ground, that being a personal action, it abated with his death.

Our statute enacts that a cause pending by appeal or writ of error in the Supreme Court shall not abate by the death of a party to the record, provided, that this shall not apply to any suit or action in which the cause of action does not survive in favor of or against the legal representative of a deceased person.   (P. D., article 6443; R. S., article 1044.)

In the recent case of Galveston City Railroad Company vs. Nolan, Galveston term, 1880, the conflicting decisions of this court upon this question were reviewed, and that of Gibbs vs. Belcher, 30 Texas, 79, approved to the effect, that the original cause of action was merged into the judgment of the district court in favor of a plaintiff, and that such judgment was not vacated or opened by writ of error or appeal, but remained valid and subsisting until set aside and constituted in favor of the legal representatives the cause of action. The motion to abate will therefore be overruled.

The objection is raised in this court, that the court below failed, under appropriate instructions, to submit separately to the jury the question of actual and exemplary damages, and to require them to respond accordingly in their verdict. That this is the proper practice, was held in Railroad Company vs. Le Gierse, 51 Texas, 189, but the decision in the case did not turn upon that question. In the later case of Railroad Company vs. Casey, Tyler term, 1878, it is said that, "it is the proper practice in cases of this character to instruct the jury to find separate verdicts, one as to the actual and the other as to the exemplary damages. But the failure to do this when not excepted to, nor the proper instruction asked," would not, of itself, be sufficient to reverse the judgment."

But the other objections also raised in the court, that the suit was prosecuted for the plaintiff by next friend and not by guardian, presents a much more serious question. Prior to our recent statutes on this subject (P. D., arts. 6969–6973; Laws 15 Leg., 187, secs. 134–138), in force at the date of the commencement of this suit and of the trial below, an infant who had no general guardian, could, under our practice, sue by next friend.

Under former decisions of this court, the effect of these statutes was to supersede this practice, and for the protection of the rights of infants, to require in such cases the apppointment by the court of a special guardian, who should qualify by taking an oath and giving bond. (Pucket vs. Johnson, 45 Texas, 550; Insurance Company vs. Ray, 50 Texas, 511; Bond vs. Dillard, Id., 302.) Without such protection, their rights might be jeopardized and their estates wasted.

We are of opinion that the failure to comply with the requisites of the statute then in force, in regard to the appointment of a special guardian for the minor plaintiff, is such fundamental error, apparent of record, that when the objection is made, even in this

court, it would require the reversal of the judgment. (Bond vs. Dillard, 50 Texas, 302.)

This determination has not been reached without due regard to the fact that in this particular case it may materially affect the rights of the plaintiff.

That the law should be thus held, however, would, perhaps, not be seriously questioned, had the minor plaintiff failed in this action. Although it seems a hardship that a law which was intended for the protection of a minor should be invoked against his interest, yet, as has been aptly said, hard cases sometimes make bad precedents, and we feel it our duty to adhere in all cases to a sound general principle rather than to deviate from it in the particular in instance.

It is due to the learned judge presiding and counsel to state that above decisions, changing the former practice, were made subsequently to the trial below.

Judgment reversed and cause remanded.

### OPINION ON REHEARING.

John Brooke vs. Henry N. Clark, by next friend.—This case comes before us on rehearing, on the proposition that "the court erred in holding that the failure to appoint a special guardian for appellee in the court below was such fundamental error, as would be considered when first made in this court, and being considered fatal, and in reversing the judgment and remanding the case for a new trial."

This proposition has been elaborately considered in the able briefs and arguments of counsel. The objects intended by our former statutes (P. D., arts. 6949–6973; Laws of 15th Legislature, 187, secs. 134–8) in regard to the appointmentment of special guardians were two fold:

First—That the minor, in addition to the general guardianship which the court itself, from its long established powers and duties, is required to give, should also have the protection or a special guardian, whose duty it was to examine, in detail, into the subject matters in regard to which the appointment was made; and for the faithful performance of which oath, bond and security were required.

Second—That the minor should have been so legally represented that the judgment, whether for or against him, should be a protection to the other party.

The statute, though now repealed, was, in our opinion, a most salutary one.

Having been intended, however, as a shield for the protection of the minor, it should not be used as a sword to his injury. Although it should have been strictly enforced by the court, yet, as this was not done in this case, but, as the next friend was treated and recognized by the court as the proper representative of the minor, and the trial proceeded upon this theory without objection from the other party, we are, upon further consideration, of the opinion that it was an irregularity, but not such fundamental error as should require a reversal of the case when presented for the first time in this court. Particularly should it be so held when it is apparent, as in this case, that the interests of the minor have not been prejudiced by the failure to appoint a special guardian, and where, should the the judgment be affirmed, his interest can still, if necessary, be protected by the appointment of a general guardian, or, if reversed, the practice which required the appointment of a special guardian, would now prevail. If this should be the rule, the other party, who was also in fault in not making the objection, could await the result of the trial; if favorable, acquiesce in it; if unfavorable, then object for the first time in this court.

The rights of minors who, in law, are not capable of protecting themselves, should receive a more liberal construction and protection than those of adults. These considerations had great weight with the court on the original hearing, and the former decision was mainly based upon the previous case of Bond vs. Dillard, 50 Texas, 302. A more careful examination of that case, however, shows that we misconceived the facts as applied to the one now under consideration.

In that case Isaac R. Dillard, who was plaintiff, both in his individual right and as next friend to the minors—his interest, to some extent, conflicting with that of the minors—at the August term of 1876, voluntarily took a new suit. At the preceding trial term he was permitted to intervene, but, as said in the opinion (50 Texas, 309), "so far as the record shows, this was done in his own individual right, and not in behalf of the minors, if he could appear for them at all as next friend." It did not affirmatively appear then that they were represented even by next friend, and, in the language of the opinion, "the proceedings and judgment, as to them, seems to have been without lawful authority."

2c

We are of opinion that the rehearing should be granted, and it is accordingly so ordered.

Rehearing granted.

Appeal from Grayson County—Opinion by Bonner, J.—John Brooke vs. Henry N. Clark.—1. The question of the effect of the death of the defendant pending this appeal was disposed of in the opinion of Justice Bonner, delivered April 23, 1880, to which reference is made.

2. So, also, the question growing out of the failure of the court to appoint a special guardian was disposed of in the opinion delivered June 21, 1881, on the occasion of granting a rehearing. Reference is here made to that opinion, and the views therein expressed are adopted as the conclusions of the court on that subject, after hearing full argument thereon on the second hearing of the case. But, while we decline to reverse the case because of this omission, we think that the rights of the minor should yet be secured, and that no payment of the amount recovered, other than a payment into court, should be allowed until the guardian of the estate of the minor shall have duly qualified.

3. It is claimed that the court erred in "refusing to charge the jury not to allow vindictive damage or smart money, if they found that the injury was the result of an innocent mistake or accident." An examination of the charge given on the subject of exemplary damages shows that it embraced the substance of the instruction asked. The jury were only allowed to find exemplary damages in case they believed that, "in his conduct on that occasion, defendant showed such an entire want of care as to evince that he was probably conscious of the probable consequences of his carelessness and indifference to the degree to which plaintiff was subjected."

They were told if they "did not believe that defendant evinced such a gross want of care as would manifest, on his part, an indifference to any degree likely to result to plaintiff therefrom," to find only compensatory damages. Again, they were told if the "act was the result of a want of care and diligence," defendant was responsible only for actual damages. Clearly, appellant has no ground to complain of the refusal of the charge asked on the subject of exemplary damages.

4. But it is said, that the verdict is not supported by the evidence, and is excessive; in this connection the point is made, apparently for the first time in this court, that under the evidence,

the court should not have submitted to the jury the question of exemplary damages. If the injury to plaintiff was the result of defendant's negligence (and there was certainly evidence to support a verdict that it was), then we would be unable to say that the damages assessed so far exceeded the actual damage to plaintiff as to show that the verdict was the result of passion or prejudice, and was manifestly excessive.

The nature of the injury, the probable mental suffering which it may cause to plaintiff when he comes to years of maturity, were considerations which may have legitimately led the jury to the conclusion that the sum found was not more than could compensate plaintiff for the actual damage suffered. In a case of this nature, the court can only set aside a verdict as excessive. We are unable to see any legal ground for doing so in this case.

5.. In regard to the objection now made, that the court erred in submitting to the jury the question of examplary damages, we remark that the record does not show that this objection was made in the court below, nor is the point properly embraced in any assignment of error. In this state of the record, and with a verdict which, if confined to actual damages, we are unable to set aside as excessive, it is by no means clear that the error, if it were error, would be fatal to the judgment.

But our opinion is, that the case, as exhibited by the evidence, called for a charge on the subject of exemplary damages. The criminal indifference of the defendant to results was a fact which the jury were at liberty to infer from the gross mistake, which he either made or permitted to be made, and the grevious injury which was liable to result and did result therefrom. If there was other evidence tending to negative any wrong intent or actual indifference on his part, still the existence or non-existence of such criminal indifference was a question of fact for the jury, and was rightly submitted to them. If the conduct of the defendant, in the discharge of his duty as accoucher, was so grossly negligent as to raise the presumption of criminal indifference to results, we very greatly doubt whether it should avail to exempt him from exemplary damages for him to show that he had no bad motive, and that he acted otherwise in a manner tending to show that he was not, at heart, indifferent. Where the act is so grossly negligent as to raise the presumption of indifference, evidence that in other matters connected therewith he had shown due care, and that actual indifference would have been in fact indifference to his own interest, should, we

think, not be allowed for any other purpose than to be considered by the jury in fixing the amount of exemplary damages. But whatever may be the true rule on this subject, we do not think that there was such evidence negativing indifference on the part of defendant as made it improper for the court to charge on the subject of exemplary damages. Cochran vs. Miller (13 Iowa, 128) is authority for exemplary damages for gross negligence in a physician in treating a patient. See also, Caldwell vs. N. J. Steamboat Company, 47 N. Y., 282–296, as bearing on the subject of exemplary damages for negligence, in what cases the court should charge on the subject, and in what cases an erroneous charge thereon would be fatal to the judgment.

6.   The application for a new trial on the ground of newly discovered evidence is so manifestly insufficient that it is not propose to discuss it. This case has received repeatedly our most careful consideration, and our final conclusion is that no error appears in the action of the court, and that the judgment be affirmed.

Associate Justice Bonner's dissenting opinion.—In my opinion, the facts in this case, under the rules of law allowing exemplary damages for gross negligence, did not authorize this character of damage; and as this element, under the charge of the court, may have largely influenced the amount of the verdict, I feel it my duty to dissent, upon this point, from the decision of the majority of the court.

Considered as a breach of contract, exemplary damages were not recoverable. (Railroad Company vs. Shirley, 54 Tex., 142.)

Considered as a tort, the testimony fails to show that reckless indifference, or evil motive, upon which rests the rule of exemplary damages in such cases.

The rule is that stated by a learned text writer: "The damages recoverable for personal injuries will mainly depend upon the nature and character of the injury and the manner in which it was inflicted. If it was the result of mere negligence that amounts to little more than an accident, less damages are recoverable than in cases where it is a wilfull or insolent character; because, in the latter case, the jury may go beyond the actual damage and give something by way of example, while in the former they are restricted to the actual damage. The rule is, that whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not

limited to the ascertainment of simple compensation for the wrong committed, but may give against the tort-feasor punitive or exemplary damages. Malice, in this rule of law, is not merely the doing of an unlawful or injurious act; the word implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations."

Wood's Mayne on Damages, 597, citing numerous authorities in notes; 2 Sedw. on Damages (7th ed.), 327, note, title, "Gross Negligence; Field on Damages, secs. 25, 78, 83, 84; Shear. and Redf. on Negligence, sec. 600; Smith v. Sherwood, 2 Texas, 461; Cotton Press Co. v. Bradley, 52 Tex., 600.

In Milwaukee and C. Railway v. Arms et al., Mr. Justice Davis, delivering the unanimous opinion of the court, after quoting the language of Mr. Justice Campbell in Philadelphia, etc., Railroad Co. v. Quigley, 21 How. (U. S.), 214, giving the above definition of malice in this connection, and stating that the rule, though announced in an action for libel, is equally applicable to suits for personal injuries received through the negligence of others, says: "Redress commensurate to such injury should be afforded. In ascertaining its extent the jury may consider all the facts which relate to the wrongful act of the defendant and its consequences to the plaintiff; but they are not at liberty to go further, unless it is done wilfully or was the result of the reckless indifference to the rights of others, which is equivalent to an intentional violation of them. In that case the jury are authorized, for the sake of public example, to give such additional damages as the circumstances require. The tort is aggravated by the evil motive, and on this rests the measure of damages." (91 United States, 493.) To the same effect is Western Union Telegraph Co. v. Eyser, reported in note to above case.

In Puckett vs. Cook, Dixon, C. J., said: "Exemplary damages in cases of this nature can only proceed from gross and criminal negligence; such negligence as evinces upon the part of the defendant a wanton disregard of the safety of others, and which in law is equivalent to malice." (29 Wis., 378.)

In Bonnan vs. B. & O. R. R. Co., Bowie, C. J., speaking for the court, says that the term gross negligence, "implies malice and evil intention. Hence, in all questions of punitive or vindictive damages, the intention of the defendant is a material consideration." (24 Md., 124.)

In Wallace vs. the Mayor, etc., of New York, the rule is laid down, that "the recovery of punitive or vindictive 'damages is allowed only where the act causing the injury has been wilfully done; where the circumstances show that there was a deliberate, preconceived, or positive intention to injure, or that reckless disregard of the safety of person or property which is equally culpable." (2 Hilton, 452.)

In Cockran vs. Miller, 13 Iowa, referred to in the opinion of this court in the present case, the statement of facts is so meagre, that we cannot ascertain the circumstances of malpractice for which the physician was held liable for exemplary damages. Under our statute, to constitute a case of negligent homicide punishable as a crime, "there must be an apparent danger of causing the death of the person killed, or some other." (P. D., art. 2258; R. S., art. 581.)

This " apparent danger" necessarily implies a knowledge of the act committed and its probable consequences.

The cases quoted from above have been selected from those in which damages were sought for personal injuries from alleged gross negligence. From those and others which could be referred to, it is believed that the true rule on this subject, and which is supported by sound principle, is, that exemplary damages should be recovered in those cases only in which the act complained of was so carelessly performed as to show in fact, or by strong presumption, a reasonable knowledge of the danger accompanying it, and a reckless indifference to the probable consequences which might naturally result ; and not in those cases in which a mistake or mishap may unintentionally, though carelessly it may be, have happened.

Although the act for which exemplary damages may be recovered in such cases is usually denominated gross negligence, it is not so much the negative act of *omission*, which constitutes negligence proper, as one which partakes more of a positive act of commission, which goes beyond the line of mere negligence, and becomes an affirmative act, done either intentionally in fact, or under such circumstances as that an intent to injure might reasonably be presumed, by which it becomes criminal, or *quasi*-criminal, in its nature. (Cotton Press Co. vs. Bradley, 52 Texas, 601.)

The propriety of allowing exemplary damages at all has been denied by learned judges, and the doctrine should not be extended. (Fay vs. Parker, 52 N. Hamp., 342; Pierce on Railroads, 307, and authorities cited in note 3.)

The testimony in this case shows that defendant was skillful in his profession; that he seemed anxious to discharge his whole duty; desired to be sent for to adjust the ligature should it become detached; no reason or motive is shown why he should carelessly, much less willfully, have caused the injury; on the contrary, his own interest and reputation, to say nothing of the ordinary prompt-ings of humanity to render aid and not to inflict injury under such circumstances, would seem conclusively to have prohibited inten-tional wrong. He unfortunately may have committed the act with which he is charged; and if so, although he may be liable for actual damages, he should not, under the circumstances, be liable also for exemplary damages.