**LEAKE et al. v. CITY OF DALLAS.**
(No. 1183.)

(Court of Civil Appeals of Texas. Amarillo.
June 6, 1917. Rehearing Denied
Oct. 3, 1917.)

1. MUNICIPAL CORPORATIONS ⊚⟹976—TAXES
—PAYMENT—PRESUMPTION.

Where a special act chartering a city declared that unless otherwise provided by the act and by ordinance passed thereunder, all property in the city liable to taxation should be assessed in accordance with the provisions of the general laws of the state, and there was no charter provision or ordinance for making out of delinquent tax rolls, Vernon's Sayles' Ann. Civ. St. 1914, arts. 7621, 7685, 7692 and 7699, respectively providing that a list of delinquents shall be made out under the caption "List of Delinquent or Insolvent Taxpayers," that when certified to by the court judge, assessment rolls and books in the tax collector's office shall be prima facie evidence that all the requirements of the law as to the listing, assessing, levying of taxes, and reporting the same delinquent, have been complied with, and that the amount is the true and correct charge, and that any incorporated city in which real estate is returned delinquent may prepare a tax list of delinquents as authorized, are applicable, and mere proof of assessment of taxes is not alone sufficient to show nonpayment after the lapse of 20 years, but nonpayment must be shown by delinquent tax record or by some other evidence outside the assessment.

2. MUNICIPAL CORPORATIONS ⊚⟹976—TAXES—
PAYMENT—PRESUMPTIONS.

The presumption of payment raised by the lapse of 20 years applies in a suit to recover alleged delinquent taxes, where there was no proof of delinquency other than the assessment itself on which the penalty and interest had been computed at a time obviously long after the levy.

3. PAYMENT ⊚⟹66(5)—BURDEN OF PROOF.

While ordinarily the burden of proof is on one alleging payment, yet after the lapse of 20 years the burden shifts to the creditor.

4. MUNICIPAL CORPORATIONS ⊚⟹1035 — ACTIONS—PROCEDURE.

Where a municipality sues, the rules of evidence and presumptions are the same for it as for an individual suitor.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by the City of Dallas against Sam A. Leake and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Sam A. Leake, B. F. Word, and Charlton & Charlton, all of Dallas, for appellants. C. F. O'Donnell, Lee Richardson, G. D. Hunt, and W. S. Davidson, all of Dallas, for appellee.

HUFF, C. J. This action was originally instituted by the city of Dallas against Sam A. Leake, B. F. Word, and William Charlton, on the 20th day of August, 1915, for taxes assessed against a certain lot described in the petition, for the year 1895, and was assessed to Margaret Hamilton and C. A. Sullivan, as the owners of the lot at that time. At the institution of the suit the lot was own-ed in part by the above-named defendants, appellants here. The parties so named answered, alleging that one-sixth of the lot was then owned by Fannie Henderson, Geo. Sory, C. R. Charlton, and S. A. Charlton. The petition was amended, making such named parties defendants. The taxes assessed for that year against the property were $126. Suit was also for $12.60 penalty, being 10 per cent. of the amount of the taxes so assessed, and $149.31 interest thereon at the rate of 6 per cent. from the 1st day of November, 1895. There was a prayer to recover the taxes, penalty, and interest, with a foreclosure of the tax lien on the lot. The defendants answered, pleading payments of taxes, presumption of payment arising from lapse of time, and pleading invalid assessment. The case was tried without a jury, the court finding the taxes were not paid, and that the presumption of payment as a matter of law would not apply to taxes. These findings are assailed by assignments as not being supported by the facts or the law. For the purpose of considering the assignments we may assume that the assessment was properly made as alleged, against the parties named, on the lot for the year 1895. The city offered what purports to be a certified copy of the assessment rendered to Melton, city assessor, by J. E. Julian, agent, April 17, 1895. We will not set out at this place the difference in the original assessment and the certified copy offered by the city, but there is a material difference in the two as to description of the property— one is not a true copy of the other. The city also introduced an instrument which the parties apparently treat as part of the tax rolls. It is headed:

"Please return this statement with remittance, Dallas, Texas, August 10, 1915. Statement of ad valorem taxes due city of Dallas on the following described property: Lot 25x100 Block 61, Street Elm, 75 Fr. Poydras.

| Year. | Name. | Tax. | Penalties. | Int. | Costs. | Total. |
|---|---|---|---|---|---|---|
| 1895 | Mrs. M. Hamilton C. A. Sullivan Est | $126.00 | $12.00 | $149.31 | .... | $287.91 |
| 1914 | Leake, Word & Charlton | (Paid) | | | | |

"Total amount due if paid on or before August 10, 1915, $287.91.

"Geo. A. Moore, Assessor & Collector,
"By E. L. Ladd, Deputy."

The certificate to this instrument is:

"This is to certify that the attached sheets are true and correct copies of the assessment sheets filed in my office and contain a true and correct statement of the assessments of the property therein mentioned for taxes due the city of Dallas, Texas, for the year therein mentioned, as shown by the tax rolls of the city of Dallas, Texas, for said year."

---

This is attested by the assessor and collector. The city also offered a deed to Leake, Word & Charlton from Louis A. Cooley, executor and devisee under the will of Cynthia Ann Sullivan, joined by other devisees. This deed is dated May 23, 1895, filed for record July 13, 1895, and describes the lot in question. There is also a deed from Margaret Hamilton to Word & Charlton, dated April 29, 1895, filed for record May 30, 1895, reciting a consideration of $6,000, and also a deed by A. C. Ardrey, administrator of the estate of Cynthia Ann Sullivan, deceased, to Leake, Word & Charlton, dated July 13, 1895, filed for record the same day, reciting a consideration of $6,000, and an order approving sale September 3, 1895. J. E. Sullivan testified that he was the agent for Mrs. Margaret Hamilton in the sale of the land to Leake, Word & Charlton and in the rendition of the property, but not for the Sullivan estate in making the assessment of the property; that it was his recollection at the time of the sale the taxes were paid; that he secured a statement to that effect from the city just prior to the sale; that he got no rents for Mrs. Hamilton on the property, for the reason that the administrator for the Sullivan estate showed him tax receipts and claimed that the money for rents had been so applied. He could not give the year or month, but said it was just before the sale, and he did not know whether it was for the year 1895, and did not know whether the tax receipt shown him by the administrator showed the payment of the taxes for 1895. Mr. Charlton testified that the Cooley deed had nothing to do with the sale; that he procured Ardrey, the administrator, to get it for them, but that they bought the Sullivan interest through the probate court. The city charter for 1889, as amended in 1891 and 1893, section 144, as set out in the statement of facts, in substance provided that taxes become due the city of Dallas the second Monday in June, and become delinquent the 1st day of October. The order of the probate court, September 3, 1895, approving the sale to Leake, Word & Charlton by the administrator, recites that all claims and indebtedness had been paid. E. L. Ladd testified:

"My name is E. L. Ladd, and I am a deputy tax collector of the city of Dallas. The papers shown me are certified copies of the assessment sheet, and tax rolls of the city of Dallas for taxes on the property described in plaintiff's petition for the year 1895, and are true and correct copies of such assessment sheet and tax rolls. These copies show taxes due on the land described in plaintiff's petition for the year 1895, together with penalties and interest due on March 1, 1916, which is the sum of $292. I prepared these copies, and they are true and correct. The tax rolls of city of Dallas show these taxes, penalties and interest due and unpaid, and the copies introduced show them unpaid."

Cross-examination by defendants:

"The sheet you show me is the original assessment sheet, and the copy I have here, introduced by the city of Dallas, is supposed to be a copy of such original sheet. (The original sheet shown to Mr. Ladd appears on page 15 of the statement of facts.) The copy I made is different from the original sheet, in that the copy I made has added to the description of the property given in the original sheet these additional words, '75 fr. Poydras' and where on the original it says 'Name' on the copy it says 'Name of Owners' and on the original it says 'Value of Ground 7850,' while on the copy it says 'Value of ground $7850,' and at the top of the original sheet, where it purports to state what year the assessment is for, it says in giving the year '189—,' while in the copy it says '1895.' These sheets are made for several years and the '—' (blank) after 189 was not filled in, but at the bottom of the original sheet the date when Mr. Julian signed appears as 'April 17, 1895.' The notation '75 fr. Poydras' appears on the tax rolls. The original has no jurat showing that an officer administered the oath to Julian, nor is such sheet signed by the tax assessor."

[1-4] The question here presented is: Was the evidence offered sufficient to show that the taxes were not paid, and should the presumption of payment after 20 years prevail as to taxes? Assuming that the assessment under the provisions of the city charter and the tax rolls show a proper levy and assessment, will it follow that this makes out a prima facie case of nonpayment? It will be observed from Ladd's testimony that the certified copy of the assessment relied upon by the city was not a true copy. The statement offered in evidence as being taken from the city tax rolls on its face shows that it was a notification to the owner of the amount of taxes, penalty, and interest due on August 10, 1915. We cannot conceive how the city tax rolls for 1895 would show $12.60 penalty and $140.31 interest on $126 of taxes for that year.

We have not examined sufficiently to determine whether the act chartering the city of Dallas should be treated as a public law, or whether it is expressly so declared by the act, but we shall presume that it does, as neither party raises any question on that ground, and we will therefore look to its provisions on the subject of taxation in determining the questions here involved. Cotton Press v. Bradley, 52 Tex. 587; Storrie v. Cortes, 90 Tex. 283, 38 S. W. 154, 35 L. R. A. 666; Houston v. Dooley, 40 Tex. Civ. App. 371, 89 S. W. 777; Tucker v. City of Paris, 99 S. W. 1127. Under article 3, § 18, of the charter of the city it is provided:

"Unless otherwise provided by this act and by ordinance passed thereunder, all property in such city liable to taxation shall be assessed in accordance with the provisions of general laws of the state in so far as applicable."

We have been unable to find any provisions for making out delinquent rolls, and no ordinance of the city is shown in the record making such provisions. Article 7 of the charter treats the subject of assessment and collection of taxes, and sections 13, 14, and 16 thereof relate to making the sale of property both personal and real, and the pre-

sumption which shall prevail as to certain precedent conditions upon the execution of deed to real estate. Section 21 validates previous assessments and assessment rolls under previous charters. Section 22 relates to description of the property in case of suits. Section 23 provides that where an owner renders property for assessment the sufficiency of the description is not subject to dispute, and section 24:

"The assessment rolls shall be prima facie evidence of the facts stated in said rolls and that all taxes assessed on such rolls have been regularly levied and assessed in accordance with the provisions of this charter, and of the law and in irregularity in the manner of levying or assessing taxes shall invalidate the same unless it appears from affirmative proof that such irregularity operated injuriously to the taxpayer attempting to avoid the payment of taxes."

It is evident from section 14 that the collection of taxes is to be made by sale of the property. The other sections, 21 to 24 inclusive, with reference to suits for the taxes, only make the rolls or assessment prima facie valid, and may establish a debt in favor of the city for the taxes and penalty. There is apparently no provision for delinquent rolls or how property delinquent shall be shown. Under the state statute (article 7621, Vernon's Sayles' Civil Statutes), it is provided a list of delinquents shall be made out, bearing the caption, "List of Delinquent or Insolvent Taxpayers." It occurs to us that such a record, if made up under the law, would be prima facie evidence of nonpayment, even though it is made primarily for the purpose of giving the collector credit on his assessment rolls. Under articles 7685 and 7692, Revised Civil Statutes, the provision is made for preparing delinquent lists, etc.:

"When certified to by the county judge, and the assessment rolls and books on files in the tax collector's office, shall be prima facie evidence that all the requirements of the law have been complied with by the officers charged with any duty thereunder, as to the regularity of listing, assessing, levying of all the taxes therein mentioned, and reporting as delinquent or sold to the state any real estate whatsoever, and that the amount * * * against said estate is the true and correct charge."

Under article 7699, Vernon's Revised Civil Statutes, it is said any incorporated city in which real estate is returned delinquent may prepare a list of delinquents in the same manner as provided under article 7685. It may be that the articles referred to do not apply to cities acting under special charters, unless it shall be made to appear that they accept thereunder. City of San Antonio v. Berry, 92 Tex. 319, 48 S. W. 496. The charter of Dallas, § 18, art. 3, provides that property shall be assessed in accordance with the general laws of the state when not otherwise provided for by ordinance. For the purpose of declaring delinquency there are no provisions in the charter that we have been able to find. It surely was not the purpose of the city to provide for entering up a charge against a lot without in some way showing that it remained unpaid or delinquent, and this would appear by having no ordinance on that subject, and by expressly making the law part of the charter. The policy of this state as evidenced by the several statutes is to keep a record of delinquents. It would, it appears to us, be an intolerable burden on the property owner after 20 years to prove that he paid his taxes. Every assessment and entry on the tax rolls establishes a debt, and would support a judgment if the owner could not show that he or some former owner paid his taxes. It seems to us the purpose of the charter was to incorporate the general laws in so far as applicable to assessing taxes, unless an ordinance is passed contrary thereto. If this was a suit to collect state and county taxes, it cannot very well be doubted but the state would have been required to prove the delinquency by the delinquent list. It seems to us the city has not made out a case by introducing an assessment and the original tax rolls. This may be evidence that a debt once existed. Under the statute the delinquent list ought to be produced. If there is none such, but the case rests alone upon the assessment and the rolls, we see no good reason why the 20 years' presumption of payment may not be applied in this case as in others. The notation on the notice to pay, introduced in evidence of the interest and penalty, proved nothing more than on August 10, 1915, some one calculated the amount. This entry does not purport to have been made up under the statute, as required for delinquents. We quote from Graves v. Stone, 76 Wash. 95, 135 Pac. 812, Ann. Cas. 1915D, 182:

"That the inferences and presumptions here invoked by appellant are applicable to tax obligations as well as those owing to private individuals seems to be well established by the authorities. 2 Wharton, Law of Evidence, § 1360; 37 Cyc. 1167; Hopkinton v. Springfield, 12 N. H. 328; Elliott v. Williamson, 79 Tenn. (11 Lea) 38; Keesling v. Winfield, 149 Ind. 709, 49 N. E. 163; In re Ash's Estate, 202 Pa. 422, 51 Atl. 1030, 90 Am. St. Rep. 658. In the last-cited case the court said: 'When the commonwealth comes into its courts, it is subject, like all other suitors, to the established rules of evidence. It must meet the burden of proof; its evidence must be relevant, material, the best attainable, and must be presented in due order under the regular rules of procedure. In all such respects it stands upon the same footing as ordinary litigants. Statutes of limitation do not apply to it because the maxim, "Nullum tempus occurrit regi," though probably in its origin a part of royal prerogative, has been adopted in our jurisprudence as a matter of important public policy. But rules of evidence and legal presumptions are not changed for or against the state as a suitor. A statute of limitation is a legislative bar to the right of action, but the presumption of payment from the lapse of time is not a bar at all, but simply a rule of evidence affecting the burden of proof. Miller v. Overseers, 17 Pa. Super. Ct. 159. It is of equitable origin, founded on experience of the

ordinary course of business and human affairs, and adopted by the law in the interest of repose and the ending of litigation. There is no good reason why it should not apply to the commonwealth just as other legal rules and presumptions do. And so it has been ruled.' "

We do not hold that it is necessary to have a delinquent list in order to sue to recover the taxes, but that the mere proof of assessment is not alone sufficient to show nonpayment after 20 years. The delinquent record would prove this fact, and if after the time when the law raises the presumption of payment, in the absence of delinquent record, it occurs to us the city ought to show by some other evidence outside the assessment nonpayment. Ordinarily the burden is on the party alleging payment, but after the lapse of time fixed by the authorities and the court at 20 years, the burden, as we understand, shifts to the creditor. Jones on Evidence, vol. 1, §§ 65, 65a, and 66. The appellant city relies upon cases requiring proof of payment of taxes to support the statute of limitations sufficient to give title and cases holding the statute of limitation will not defeat recovery of taxes. State v. Gibson, 27 Tex. Civ. App. 355, 65 S. W. 691. In that case the holding was based upon the statute denying a delinquent right to plea'd the statute (article 7662, R. C. S.), but before that act the courts of this state, as pointed out in the Gibson Case, held that the statute of limitation could be pleaded against counties by the delinquent, citing Railway Co. v. Travis, 62 Tex. 16; Johnson v. Llano County, 15 Tex. Civ. App. 421, 39 S. W. 995. The rules of evidence and presumptions are the same for the city litigant as it is for any other creditor, and we think should be enforced as to it as well as to others. In this case there is a deed from the executors and legatees before the taxes were due in 1895, but it is shown with reasonable certainty the sale of the interest of Mrs. Sullivan was not consummated, or title vested in the vendees until after the taxes were due. The vendors were therefore due the taxes as shown by the deeds and the assessment. The agent who effected the sale and who rendered the property for taxation testified that his recollection was that the taxes had been paid; that the administrator of the Sullivan estate showed him tax receipts, and would not pay Mrs. Hamilton her portion of the rents because he ha'd paid this money on the taxes. The order of the probate court on the confirmation of the sale recites there was no claim against the land and so adjudicates. These circumstances, together with the fact that all taxes before and after that year have been regularly paid, and that no claim for more than 20 years is shown to have been made occurs to us, in the absence of any evidence to the contrary save that of the assessment, ought to support a finding of payment. We believe the trial court was in error in finding as a fact the

taxes were not paid and in holding that the presumption of payment does not apply in tax cases.

We shall not discuss the question of the sufficiency of the assessment as to 'description or the like. It occurs to us that sections 21–24 and others of article 7 of the charter will support the assessment and description. The case of Slaughter v. City of Dallas, 101 Tex. 315, 107 S. W. 48, Id., 103 S. W. 218, settled this question we believe in favor of the city.

For the reasons above stated, the case will be reversed and remanded.